VETTERLI, Chief of Police, v. CIVIL SERVICE COMMISSION OF SALT LAKE CITY et al.

No. 6451. Decided February 8, 1944. (145 P. 2d 792.)

See 43 C. J., Municipal Corporations, sec. 1251; 10 Am. Jur. 931; 37 Am. Jur. 867.

*E. R. Christensen,* City Atty., *Gerald Irvine* and *A. Pratt Kesler,* Asst. City Attys., all of Salt Lake City, for plaintiff.

*D. Ray Owen, Jr.* and *E. A. Rogers,* both of Salt Lake City, for defendants.

McDONOUGH, Justice.

James S. Ramsey was a first grade patrolman of the Salt Lake City police force on May 31, 1941, employed in the classified civil service. He had a satisfactory record for 16 years. For several months he had domestic troubles which resulted in loss of sleep, nervousness and worry. He was assigned to night shift at the time here involved, and he was familiar with the rules of discipline and the regulations of the department.

When he discovered that his wife had left home on May 30 contrary to his wishes, he decided to leave town. He did not request any leave of absence nor make any disclosure of his plans to anyone in the police department, although he had ample opportunity for doing so prior to his departure. He made preparations for leaving, more than 12 hours prior to

the last shift on which he worked. He packed his personal belongings in several boxes, and when he reported for duty on May 31, he did not wear his uniform, but he took with him some of the necessary equipment. He drove the police patrol car, accompanied by officer Haight. Not even Haight had any information as to the planned departure from the State. During the last shift Ramsey worked, he detoured from his assigned area to go home to leave part of the police equipment.

Ramsey left for Oregon in an automobile shortly after he completed his shift. When he failed to report for duty on the morning of June 1, a search was made for him. No one was found at his home. About a day or two later Mrs. Ramsey telephoned to the police station to report that she had found a note addressed to her, on top of a stack of police equipment at their home, reading: "Dear Bee: I am sorry that I cannot live under these conditions any more. Good bye, Jim." Mrs. Ramsey stated that she tried to locate him, but did not succeed. Officer Steinfelt made a report to the chief of police in which he concluded that Ramsey had deserted the police force. On the basis of such report, on June 3, 1941, Reed E. Vetterli, chief of police, wrote a letter to the City Commission and sent a copy to the civil service commission, in which he stated that officer Ramsey was dismissed from the service with prejudice and his name ordered off the payroll effective at the conclusion of business as of May 31, 1941.

Ramsey, it appears, obtained his first information about the letter of the chief of police from a friend in Salt Lake City who sent newspaper clippings concerning the incident to him at Forest Grove, Oregon. None of the city or police officials learned anything as to his whereabouts until June 11, when Ramsey wired the Mayor of Salt Lake City, who was commissioner of public safety, stating that he had been ill, and asking if his job was still open. From the time he left on May 31 until after he returned on June 14, Ramsey made no effort at all, other than the wire to the mayor, to contact any one in the police department, nor to offer any

reason or explanation for leaving the state without notification or without first obtaining a leave of absence.

On June 16 Ramsey interviewed the chief of police. There was some effort to induce the chief to recall the letter of dismissal and arrange a suspension for 6 months. The chief offered to recall the letter if Ramsey would resign, but the latter declined to resign and indicated that he intended to appeal to the civil service commission. It appears from the record that from June 3 until June 18 the chief was of the opinion that his notice to the city commission of the discharge of Ramsey from the police force was subject to its approval or disapproval, and a letter to such commission dated June 18 indicates such belief. On June 24, 1941, the chief of police addressed a letter to Ramsey and sent copies to both the city commission and the civil service commission, in which the chief advised Ramsey that the city commission refused to review his case, and that said letter should be considered "sufficient notice that you were discharged from the service of the Salt Lake City police department, the discharge dating from the conclusion of business May 31, 1941."

On Monday, June 30, Ramsey filed an appeal with the civil service commission. The commission then informed the chief of the appeal and requested him to file specific charges as the basis for the dismissal. The report of officer E. J. Steinfelt was embodied in the charge which stated that the conduct of Ramsey constituted desertion from the police force.

At the hearing there was little dispute as to the facts. The chief of police objected to any and all proceedings on the ground that the appeal had not been perfected within the time allowed by law, and that the commission was without jurisdiction. The objections were overruled and the hearing was conducted. Thereafter, the commission wrote a decision in which it found that the chief issued an order of "removal and discharge" on June 24, 1941, and it concluded:

"In this case Ramsey failed to report for work on the morning of June 1st; absented himself from the City and State, without leave properly procured from his Chief of Police, and without reporting to

his Chief, or to his Sergeant, for two weeks; and then he failed to give to the Chief any satisfactory or sufficient reason for his absence."

The commission made findings to support the charges filed by the chief of police; but it concluded that while such conduct justified punishment, outright dismissal was too severe in view of Ramsey's record of 16 years of satisfactory service, and in view of the fact that there was no crime nor any moral turpitude involved. The commission concluded that it had jurisdiction to modify the order of the chief, and it ordered suspension without pay for six months and directed the chief to reinstate Ramsey at the expiration of such period. By his application for writ of review, the chief of police questions the validity of the order of the civil service commission, and its jurisdiction to modify the order of dismissal.

Owing to the fact that both the chief of police and the civil service commission desire to have the statute involved in this case construed by this court, and in view of the conclusions reached as to its meaning, we shall not discuss either (a) the proposition that the appeal was not in time, or (b) the contention that Ramsey deserted the police force by unexplained absence of more than 2 weeks which constituted a voluntary severance from his position in consequence of which no appeal would lie to the commission to relieve him of the consequences of his voluntary severance from employment. We shall consider merely the question of whether the commission exceeded its authority in setting aside the order of dismissal and outright discharge and in substituting therefor an order of suspension for a period of six months.

Two questions are in reality involved: (1) Is the authority of the civil service commission, on appeal from an order of the head of a department, limited to affirmance or disaffirmance of such order, or may it, as the commission did here, substitute a lesser punishment for the alleged misconduct? (2) If it may but affirm or reverse the department head, is it limited to affirmance where it finds the discharged

officer guilty of the misconduct charged by the department head?

The answer to such questions involves the interpretation of the following section of our statutes (15-9-21, R. S. U. 1933, now U. C. A. 1943) :

"All persons in the classified civil service may be removed from office or employment by the head of the department for misconduct, incompetency or failure to perform his duties or failure to observe properly the rules of the department, but subject to appeal by the aggrieved party to the civil service commission. Any person discharged may within five days from the issuing by the head of the department of the order discharging him appeal therefrom to the civil service commission, which shall fully hear and determine the matter. The discharged person shall be entitled to appear in person and to have counsel and a public hearing. The finding and decision of the civil service commission upon such hearing shall be certified to the head of the department from whose order the appeal is taken, and shall be final, and shall forthwith be enforced and followed by him."

In support of the contention that the commission possesses the authority asserted by its judgment and order, counsel for defendants point to the wording of our statute wherein it is provided that upon appeal the commission "shall fully hear and determine the matter." They urge upon us the construction thereof rendered in the case of *Hackett* v. *Morse*, 45 Cal. App. 788, 188 P. 308, 309, wherein the court said:

"It is our opinion that, since the board shall fully hear and determine the matter, it must hear and pass upon all questions involved in the controversy. The question of what is reasonable punishment for an offense is as important as whether or not an employe committed an offense, and is as necessary for the accomplishment of the purposes of the civil service system that the board have power to investigate the one as the other."

In that case a fireman was discharged by his superior officer for alleged insubordination. On appeal to the civil service board, a decision was rendered in which the board held that he was not guilty of such insubordination as would

justify his discharge, and it ordered in lieu of discharge, that he be denied compensation for two months.

Plaintiff, on the other hand, insists that the reasoning of the California court is not persuasive for the reason, among others, that the ordinance there construed differs materially from the statute here involved. The provisions of the charter of Oakland, California, construed in the Hackett case, specify that any person may be *suspended, fined,* or discharged by the commissioner in whose department he is employed, while the cited statute of this state provides only that a person may be *removed* from office or employment by the head of the department for the causes stated, and that a person so *discharged* may appeal to the civil service commission. Furthermore, by the provisions of Section 15-6-64, U. C. A. 1943, the department head is authorized to suspend an officer for a period of not more than 15 days, but there is no right of appeal from such suspension. Thus, if the commission, on an appeal to it from an order of dismissal, is empowered to impose a suspension, it may on appeal render a judgment which the department head could not impose in the first instance.

To the effect that the words "remove" and "discharge" in the context do not comprehend the power of suspension, plaintiff cites: *Kennedy* v. *Board of Education,* 82 Cal. 483, 22 P. 1042; *Lotts* v. *Board of Park Com'rs of L. A.,* 13 Cal. App. 2d 625, 57 P. 2d 215; *Weigle* v. *City and County of San Francisco,* 23 Cal. App. 2d 274, 72 P. 2d 902; and *Boise* v. *Mayor of City of Fall River,* 257 Mass. 471, 154 N. E. 270. That "remove from office" and "discharge" are synonomous expressions as used in our statute, is clear from a cursory reading thereof. The power to "remove from office" conferred upon the head of a department means not a temporary but a permanent removal from office or discharge. Hence it is true that if the commission may order a suspension from office as a substitute for discharge, on an appeal it may do that which the removing officer in the first instance could not lawfully have done, if the suspension is for more than 15 days.

However, if the statutes were such as to indicate a legislative intent to give such authority to the commission, though withholding it from the head of the department who is first called upon to assess the grievousness of the misconduct of an officer, that intent should, of course, be given effect. However, such is not the case. The circumstances that there is given to the department head a specific but limited power of suspension without any review thereof by the commission; and likewise a power of discharge, which, however, is subject to review, but no power to impose a period of suspension longer than that which might be imposed without a right of review; all suggest, in the absence of other provisions indicating a contrary intention, the following legislative intent:

That for infractions of the rules of conduct the department head might suspend a person for 15 days, as a means of effecting discipline in his department. That in such sphere of discipline, he is in nowise subject to the supervision of the commission. That in aggravated cases and in cases where the disciplinary measures given exclusively to the department head prove inefficacious, the power to discharge is conferred; but because of the severity of the penalty, as well as because of the fact that it involves a permanent severance from the department, thus affecting the make-up of the personnel, over whose appointment the commission is given a limited control, a right to appeal to the commission is granted to the discharged officer or employee. The civil service commission is made the ultimate authority to determine whether the discharge should or should not stand. To this end the commission is given the authority and duty to "fully hear and determine the matter." That is, it is to accord a full hearing to the appellant and to the department head as to the truth or falsity of the charges made, and thereupon to determine whether to affirm or to set aside the order made. We do not find in our statute any phrase which grants the same jurisdiction on appeal as is conferred where the power on appeal is to "affirm, modify or reverse"—an expression usually if not

universally employed where such authority is actually conferred. The substitution of suspension for 6 months without pay, in lieu of dismissal, was beyond the power of the commission.

So concluding, we are confronted with the second question posed. We state it here in different form: May the commission upon finding that the charges made by the department head are true, nevertheless set aside the order of dismissal? This question must not be confused with the question of whether or not in our opinion the conduct of defendant Ramsey merited dismissal. It is a question of what authority is conferred upon the commission by the statute.

Appellant asserts that the power of the commission on appeal is merely to inquire into whether the chief in the instant case substantiated the charges made against Ramsey; and it having here found that he had, it had no discretion, but had the duty to sustain the order of discharge. On the other hand, defendants assert through their respective counsel, that since the commission found that the penalty imposed was too severe, it follows that the only order which the commission could consistently make, if it lacked the power to impose a substitute punishment, would be to reinstate Ramsey as of the date of the order of discharge. We are of the opinion that both contentions must fail.

The contention of defendants, it must be admitted, seems logical enough. The penalty being determined by the commission to be too severe and the commission being confronted with the question of whether to uphold or set aside the order assessing it, it follows that the latter is the only just course. But the opinion of the commission which states that the penalty was too severe for the misconduct proved, was expressed in the light of the supposed authority of the commission to modify such penalty. It could not consistently be of the opinion that the judgment of dismissal was not too severe but entirely justified, and yet modify the same. It may well be in the instant case, that had the commission concluded that it had no power to modify the judgment of the

department head, that it would conclude that from the standpoint of justice to the appealing officer on the one hand and discipline in the department on the other, it should uphold the order of the Chief of Police.

However, we are not persuaded that under the statute the commission on an appeal must sustain the department head in every case in which it finds substantiated the charge of "misconduct" or of "failure to perform his duties" or of "failure to observe properly the rules of the department," however slight the infraction of such rules might be. If it must, then any failure of duty or any infraction of the rules would justify dismissal insofar as the commission's power on appeal is concerned. But the power to "fully hear and determine the matter" does, in our opinion, give authority to determine whether the order of discharge is justified by the conduct of the officer. In *Hawkins* v. *City of Steubenville*, 134 Ohio St. 468, 17 N. E. 2d 641, 643, a statute of Ohio is discussed which provided for an appeal to a commission from an order of discharge, the commission being given authority to affirm, modify, or disaffirm the order made by the department head. Where a member of the police department was involved, the statute provided for a further appeal from the judgment of the commission to the court of common pleas, to "determine the sufficiency of the cause of removal. Gen. Code Ohio, § 486-17a. Upon the affirmance of an order of dismissal of the officer by the commission, an appeal was taken to the court of common pleas where it was held that there was not sufficient cause for removal of the officer, but that disciplinary action was justifiable, and it substituted for discharge suspension for four months.

On appeal from said judgment, the Supreme Court of Ohio held that the jurisdiction of the court of common pleas was limited to determination of whether there was sufficient cause for removal, and that it was without power to modify the judgment of the commission. However, it also ruled that the court was not bound to affirm the decision of the commission upon finding that the officer was guilty

of the several charges preferred against him. "It will be noted," says the court, "that the statute employs the words 'may be removed.' Under this language, removal by the director of public safety, or by the civil service commission, of a police officer upon a finding of guilty of the offenses listed in the statute, is not made mandatory. By the same token, if the Court of Common Pleas finds that the officer was guilty of one or more of the statutory charges preferred against him, but is of the opinion that there is not sufficient cause for removal, it is not mandatory upon the court to affirm the commission."

We are of the opinion, and so hold, that the power conferred on the commission to "determine the matter" brought before it on appeal, is the power to determine the *sufficiency of the cause of removal,* and not simply ■ to adjudge whether the cause alleged by the department head is true. It having that authority, it is not our province to interfere with the exercise of that judgment and direct an order of affirmance or reversal of the order of discharge. We are limited in this proceeding to a determination of whether the commission regularly pursued the authority conferred upon it, and clearly we may not reverse the case on the facts unless the commission acted arbitrarily or capriciously. *Pincock* v. *Kimball,* 64 Utah 4, 228 P. 221. Having determined that it exceeded its authority by substituting six months' suspension for discharge, its judgment so ordering is set aside and the cause is remanded to the civil service commission. Each party shall bear his own costs.

WOLFE, C. J., and M. J. BRONSON, District Judge, concur.

LARSON, Justice (concurring in part, dissenting in part).

I concur in the ultimate result and order made in the prevailing opinion to the effect that the cause be remanded to the commission for such proceedings as may be necessary in conformity with the opinion of this court. But I cannot

concur in the rationale and statutory constructions made and implied in that opinion. As I read the prevailing opinion, it limits, by force of a legislative inhibition, disciplinary action in the department to the summary action of a suspension not exceeding fifteen days, or to a complete discharge and removal from the service. I think this misconceives the purpose and scope of the civil service act, misinterprets the legislative intent, and places too rigid and narrow a construction on the statute. The statutory provisions are meagre, merely skeletal, and their import therefore must be gleaned from their history, background and purpose. To get a proper vision and perspective we go back to the Laws of 1899, Ch. 28, p. 45, where the Legislature directed the city council of cities of 12,000 inhabitants or over to create a police and fire department; and gave the city "full power to provide by ordinance" the number, salary, grade, etc., of officers and employees. It then provided that department heads were to be appointed by the mayor with the consent of the council, and such department head, with the approval of the mayor, and the consent of the council could appoint all subordinates, and remove them at any time, without cause, hearing or opportunity to be heard, and such action was not subject to review or to be called in question. The city council was to prescribe and define by ordinance the qualifications and duties of the officers and employees of the departments; the head of each department was given express statutory authority to suspend any subordinate without pay for a period not exceeding fifteen days. This chapter, enacted in 1899, remained on the statute books until 1921. It appears as Chapter 12 of Article 16 (Sec. 654 to 665 incl.) C. L. Utah 1917. This setup was the "spoils system" at its worst. By Laws of Utah 1921, Chap. 13, p. 54, the Legislature provided for a "Civil Service Commission in Cities." It repealed three sections only of Chapter 12, C. L. of Utah 1917, and enacted 15 new sections. This act is found substantially unchanged as Art. 6, Chap. 6 of Title 15, and Art. 3 of Chap. 9 of Title 15, being Sections

15-6-61 to 15-6-64, inclusive, and 15-9-9 to 15-9-22, inclusive, U. C. A. 1943.

The amendment made in 1921 creating civil service in the police and fire departments, kept intact a number of sections of the act of 1899, among them being one which provides that the department head may suspend a subordinate for not to exceed fifteen days without pay. This section has been preserved as Sec. 15-6-64, U. C. A. 1943, which is under the article dealing with police and fire departments generally, and not under the article dealing with civil service. I call attention to the fact that this is a "carry over" dealing generally with the police department and not an incident or part of the civil service institution, and therefore should not be construed as a limitation on the power of the city to vest in the department head other disciplinary powers besides that of complete discharge. The statute provides for a civil service commission in cities of the first and second class. Sec. 15-9-11, U. C. A. 1943. Such commission must be created, and its powers and duties defined by ordinance. Sec. 15-7-2, U. C. A. 1943. Section 15-9-14, U. C. A. 1943, provides that "the civil service commission shall make all necessary rules and regulations to carry out the *purposes of this article* and for examinations, appointments and promotions." (Italics added.) Implicit therein is the idea that the civil service commission has, or by ordinance may be given, powers pertaining to maintenance of the service other than those governing examinations, appointments and promotions. Then again, Sec. 15-9-19 declares that employees of the department prior to May 10, 1921, shall retain their employment subject however to *removal or suspension* in accordance with law *and the rules and regulations* of the Civil Service Commission, implying that the commission may make rules and regulations governing removals and suspensions from the department. By section 15-9-21, U. C. A. 1943, the department head is given authority to remove from office or employment any subordinate for misconduct but subject to appeal by the aggrieved party to the Civil Service Commission, "which shall fully hear and determine

the matter." The prevailing opinion says *the matter* to be determined is the one appealed, that is the matter of which he is aggrieved, to wit, the discharge or removal from office or employment. As far as this particular section of the statute is concerned I think that is correct.

Without at this time elaborating the rationale, I think that from the background, the setting, and the purposes of the civil service law, and the skeletal provisions of the statutes, the following may be fairly deduced as the legislative intent and plan. Substantial fire and police departments are necessary in first and second class cities; such departments operate most efficiently with a specially selected and trained and experienced personnel; the old spoils system prevented the training and skill and efficiency necessary for such service; to remedy such evils, fire and police departments were to be put under the civil service; to effectuate this, cities of the first and second class were directed to create and set up a civil service commission to *carry out the purposes* of the civil service policy; such commission would be set up by ordinance, which would fix and determine its powers and duties within the provisions fixed by statute; the civil service commission within the boundaries fixed by the ordinance would prescribe rules and regulations governing the personnel of the police and fire departments to accomplish the purposes of the civil service; such rules may cover examinations, appointments, promotions, suspensions, removals, and other matters pertaining to the civil service in the departments when vested in the commission by ordinance; the following limitations are imposed on the city and the commission by the statute: (1) The chief of the department is not under civil service while acting as chief; (2) If he came from the classified service to be chief, he may at the termination of such duty return to his former place in the classified service; (3) For departmental discipline, the chief may suspend a subordinate for not to exceed fifteen days, which action shall be without review; (4) Removal from the service may be made by the chief for causes provided by law or ordinance, but such removal shall

always be subject to appeal and review by the civil service commission; (5) Such other disciplinary action may be taken by the chief as may be provided by ordinance or the rules of the commission; (6) Disciplinary action by the chief, other than suspensions not exceeding fifteen days, or removal from employment, may or may not be appealed to and reviewed by the commission, according to the provisions of the ordinance, and the rules of the commission promulgated under the powers granted by the ordinance; (7) Upon proper appeal of any case to the commission, it may affirm or reverse the action and order of the chief under its power to fully hear and determine the matter. As to whether it may modify the order and impose a greater or a lesser punishment than that upon which appeal is taken, depends upon the provisions of the ordinance defining the powers and duties of the commission, and upon the rules and regulations of the commission properly issued and promulgated. Unfortunately there is in the record before us neither the ordinance nor the rules of the commission. The record indicates that the only matter really presented and considered by the commission was whether Sec. 15-9-21, U. C. A. 1943, by virtue of the language ("fully hear and determine the matter") used therein, vested in the commission the power to substitute its judgment of the penalty to be imposed for the judgment of the chief, and impose upon Ramsey a suspension for six months instead of a removal. This the commission attempted to do upon the reasoning of *Hackett* v. *Morse,* 45 Cal. App. 788, 188 P. 308, 309. As pointed out in the prevailing opinion and recognized in the decision of the commission, the city charter involved in the Hackett case had one striking difference from the statute here involved. The charter provided that for misconduct a member of the department was subject to "suspension, fine [or], removal from office," and in all cases allowed an appeal to the commission. Under the statute here involved no penalty is provided except *suspension not exceeding fifteen days,* which is not reviewable, or *removal from employment,* which is appealable. Accepting the reasoning

of the Hackett case that the power in the commission to "fully hear and determine the matter" vests in the commission the power to do anything the chief could have done, as pointed out in the prevailing opinion of Mr. Justice McDONOUGH there is in the statute no provision for suspension, except one not to exceed fifteen days. If the commission could modify the action of the chief and impose anything other than a removal or a suspension not to exceed fifteen days, the authority for the penalty must be found elsewhere than in the statute. Referring again to the Hackett case, that opinion points out that the authority of the commission to *affirm, reverse or alter* the judgment of the chief is expressly granted by the charter.

So under our statute I think the city by ordinance defining the powers of the commission and of the chief may well grant the commission such power; it may authorize sundry disciplinary measures, and grant appeals in certain cases, as well as in removal, or in all cases except suspensions not exceeding fifteen days. It may, within proper limits, authorize the commission by rule and regulation to provide some of these things. Whether it has done so or not we cannot tell. Since the statute alone does not authorize such modified penalty as here imposed by the commission, it must follow that the judgment of the commission cannot be upheld on the statute alone, and it follows that I concur in the result arrived at by Mr. Justice McDONOUGH in the prevailing opinion that the order appealed from be set aside and the cause remanded to the commission for proceeding according to law. I also concur in the order as to costs.

MOFFAT, Justice (dissenting).

This analysis is limited to the single question posed in the opinion of Mr. Justice McDONOUGH, viz.:

"Is the authority of the civil service commission [in cities of the first and second class], on appeal from an order of the head of [the] department, limited to affirmance * * * of such order, or may it as the commission did here, substitute a lesser punishment for the alleged misconduct?"

Sec. 15-9-21, R. S. U. 1933, now same section U. C. A. 1943, is quoted at length in the prevailing opinion. It is certain language in that section that gives rise to this discussion. It may be granted that much may be said for the position taken in the prevailing opinion. However, the whole issue turns upon a few words of that section. They are, "Any person discharged may * * * appeal * * * to the civil service commission, which shall fully hear and determine the matter." Put in briefer and a bit more mandatory form, *"the civil service commission shall hear and determine the matter."* Does that statutory language limit the civil service commission to saying, "Order affirmed" or "Order reversed," and no more? If such is the limit of authority given to the commission, why make findings? Why give reasons for saying "Yes" or "No"?

The prevailing opinion concedes the commission has the right and power to *fully hear* and determine the matter, but limits the judgment to an affirmance or reversal. The power to reverse and reinstate a man in civil service is a complete reversal of the order of discharge. If the commission can affirm the order of discharge, a reasonable construction would seem to authorize the commission to enter a conditional order or a modified order within the limits of the two extremes.

The first part of the section has to do with the power of the head of the department to remove any person in the classified service "for misconduct, incompetency or failure to perform his duties or *failure to observe properly the rules of the department."* (Italics added.) The rules of the department are made by the head of the department in part, within the law and ordinances; the city commission makes some. In the matter of promotions "The civil service commission shall provide for promotion in the classified service on the basis of ascertained merit, seniority," etc. Sec. 15-9-18, U. C. A. 1943.

Sec. 15-9-14, U. C. A. 1943, provides,

"The civil service commission shall make all necessary rules and regulations to carry out the purposes of this article *and* for examina-

tions, appointments and promotions. All such rules and regulations shall be printed by the civil service commission for distribution." (Italics added.)

The above section and several others are discussed in detail in the case of *Hanchett* v. *Burbidge*, 59 Utah 127, 202 P. 377, 379. Nothing is directly said in that case about the problem in the instant case. That case involved a matter of demotion and promotion. There are some statements in the opinion that tend to support the view herein expressed. It is said:

"The civil service act must be read in its entirety and also in connection with cognate statutory provisions. * * *

"Were nothing stated in the statute about removal of subordinates in the police department, it would still follow, from the provisions hereinbefore referred to, that it is the chief of police who is invested with the power of removal."

This of necessity must be the case. Here we are not concerned about the power of appointment or removal, but with the review or hearing upon the matter after the order of removal has been made and appeal has been taken therefrom. Removal is accomplished by the order of the head of the department, subject to the right of appeal. Appointments are, except for heads of the Police and Fire Departments, limited in those departments to selections from the persons certified as to fitness and qualifications after examinations by the civil service commission. A discharge or removal is made by the head of the department. No hearing notice or review of the reasons for the removal are provided for except by appeal to the commission. No record is made by the head of the department for review by the civil service commission. It is not a trial de novo. It is an original investigation. Presumptively, a person removed would be told the reasons for his removal upon some ground of "misconduct, incompetency or failure to perform his duties or failure to observe properly the rules of the department." However, on the appeal from the order of removal the civil service commission makes it own record. It hears the evi-

dence for the purpose of determining the matter. It makes its own findings. If it finds there was some ground for disciplinary action, but that there was not sufficient to warrant removal, it may reinstate the man. If it finds that in the interest of conformity to regulations or otherwise that removal is an unreasonable punishment, then in good conscience either order may amount to a stultification. Is there no intermediate ground?

Referring again to the *Hanchett* v. *Burbidge* case, it is uncertain how far the court would have gone had it had the present issue before it. Note the language:

"Unquestionably the civil service commission may entertain complaints from citizens, may investigate the conduct of police officials, may compel the attendance of witnesses, and make findings and conclusions, *and then recommend* to the head of the department what he should do in the case. But we can find nothing in the law that either expressly or by implication authorizes the civil service commission to order and command the chief of police to comply with the recommendations made by the commission, *except when an appeal is taken from the action of the head of the department.*" (Italics added.)

Again the court said:

"Possibly it would have been wiser to have invested the civil service commission with greater power and authority. However, we have nothing to do with what the law ought to be. We must be guided by the law as it is. We cannot by construction liberalize the statute and enlarge its provisions. When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction."

With this, I think, all will agree. But is the language, the commission *"shall fully hear and determine the matter,"* clear and unambiguous? Had it been so this case would probably not have been here. The solution and reasons given in the prevailing opinion have not convinced me that there are not other cogent reasons for thinking the legislative intent is different from that submitted in the prevailing opinion.

The civil service commission is not an ordinary administrative agency. It is more than a fact-finding body. Hence,

the language "fully hear" covers the factual side and "determine the matter" means more than merely finding the facts. There is more involved in the matter than being "discharged." Considerations of what may meet the ends of justice in the very nature of the case are involved. Civil service employment carries with it more than the idea of a fixed term or a hire and fire job, outside of civil service. To limit the commission by the language "fully hear and determine the matter," to saying yes or no to a discharge imports a rigidity of application. It limits the commission to a board of examiners of the qualifications and fitness of persons who may go into the pool from which persons may be selected for employment.

The review of industrial commision cases in this court is limited by the language, "* * * shall enter judgment either affirming or setting aside the award." Sec. 42-1-79, U. C. A. 1943. Had that language been used, the civil service commission would have been limited to "affirming or setting aside" the discharge.

On the other hand a subsequent statute relating to reviews of unemployment compensation cases decided by an authorized representative of the commission may be appealed to the appeal board and may again be appealed to the industrial commission, either by the party aggrieved or by the appeal tribunal or by the commission of its own motion to itself. In that procedure we find the language (Sec. 42-2a-10, U. C. A. 1943) :

"And after affording the parties reasonable opportunity for a fair hearing, shall make findings and conclusions and on the basis thereof *affirm, modify or reverse* such determination."

Had such language been used in the civil service commission act, there would have been no ambiguity.

The language "to fully hear and determine the matter," is not as limited as the language "either affirm or set aside," nor is it as specifically inclusive as "affirm, modify or reverse." However, the question, it seems to me, before the civil service commission is not limited to the "matter" of

discharge; but includes the grounds, and reasons for discharge, and the fitness of the penalty. When one is discharged the matter of discipline is no longer involved. True, the head of the department is limited to a fifteen day suspension without pay, as a disciplinary measure under the statute, but does any penalty or disciplinary measure in excess of fifteen days "determine" that a civil service employee falls within one of two classes, viz., total unfitness requiring discharge, or the head of the department was utterly wrong and the employee is a fit and proper person?

Law is not only the product but is also the prop of civilization, and should be so applied as to meet the practical operation of an organized set up for the improvement and benefit of a service. This matter is discussed neither for nor against any of the parties involved therein. In its wisdom has the Legislature given the civil service commission only such power as limited by the prevailing opinion? If not, this discussion opens the matter so that if the law may be improved by granting more power to the civil service commission there are ways and means for bringing about the result.

The prevailing opinion cites and comments upon the case of *Hackett* v. *Morse,* 45 Cal. App. 788, 188 P. 308, and points out the differences in the statutory wording; yet the meaning there given to "fully hear and determine the matter" renders the accomplishment of the purposes of the system more workable, practical, and should aid in harmony of action and result in the administration of the department to which it applies.

For the reasons stated I dissent.

PRATT, Justice, on leave of absence.