**SALT LAKE CITY CORPORATION, Petitioner,**

v.

**SALT LAKE CITY CIVIL SERVICE COMMISSION, and Louis Jones, Respondents.**

**No. 950110-CA.**

Court of Appeals of Utah.

Dec. 14, 1995.

Roger F. Cutler, City Atty., Frank M. Nakamura, Asst. City Atty., Steven W. Allred, Chief Deputy City Atty., Salt Lake City, for Petitioner.

Bryon J. Benevento, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for Respondent Jones.

Before DAVIS, Associate P.J., and JACKSON and WILKINS, JJ.

## OPINION

JACKSON, Judge:

Salt Lake City Corporation (City) petitions for review of the Salt Lake City Civil Service Commission's (Commission) order vacating Salt Lake City Police Chief Ruben Ortega's (Chief) suspension of Officer Louis A.W. Jones.[1] Specifically, the City argues the Commission incorrectly vacated the Chief's modification of his original discipline for Officer Jones. Having determined the Commission did not exceed its statutory authority, we affirm.

## FACTS

The City hired Jones as a police officer in 1990. From October 1991 to November 1993, Jones was involved in an extramarital affair with Linda Nordquist, a City dispatcher. On November 1, 1993, Jones and Nordquist decided to stop seeing each other. Af-

ter work that same evening, Jones drove to Nordquist's home.

Jones noticed a vehicle parked in front of the house, and he radioed City dispatch to run the license plate for him. Dispatch informed Jones the vehicle was owned by another City police officer. Jones knocked on both the back and front doors, but Nordquist refused to open them. Jones then called Nordquist from the cellular phone in his vehicle and asked her to meet him face-to-face. Nordquist again refused to come out and talk to him, so Jones threatened to drive his car through her house. Jones drove his vehicle to the back of the house and positioned it so the headlights shone into a sliding glass door in Nordquist's bedroom.

When Nordquist still refused to talk with him, Jones left Nordquist's residence and drove home. Following an argument with his wife, Jones took an overdose of his wife's prescription, antidepression medication. Jones was hospitalized that night and released the next day.

The police department placed Jones on administrative leave with pay, pending a fitness for duty examination. After Jones passed the department's fitness evaluation, the department reinstated Jones on December 2, 1993. Jones returned to full and unrestricted duty on December 5, 1993. From that date until March 17, 1994, Jones satisfactorily performed his regular police duties. Nothing during that three-and-a-half-month period called into question Jones's ability to perform his police duties. With the exception of the off-duty incident on November 1, 1993, Jones had met or exceeded department performance standards. He had received several letters of commendation and was named "Officer of the Month." The department never warned Jones about his relationship with Nordquist or about any other issues involving off-duty conduct.

Following the department's internal affairs investigation of the off-duty incident, Captain Steven Chapman recommended Jones be suspended for thirty days without pay. Lieutenant John Schroen and Assistant Chief

1. The Commission did not appear in response to the City's petition. Counsel for Jones ably represented the Commission's position.

Larry Stott also recommended suspension of up to thirty days without pay. The department then referred the matter to a Citizens Review Board (Board) for its recommendation. The Chief recently had instituted formation of the Board to hear departmental disciplinary matters. At the Board's hearing, Jones was allowed to present mitigating factors in his defense but was not allowed to present evidence refuting the City's accusations or to examine witnesses. Jones also was excluded from the hearing during the City's presentation. Two citizens along with a peer-level officer and a command-level officer composed the Board. After an hour-and-a-half hearing, the Board recommended Jones be terminated.

On March 17, 1994, the Chief fired Jones. Jones appealed the Chief's termination to the Commission pursuant to Utah Code Ann. § 10-3-1012 (1992). The Commission held an evidentiary hearing to determine whether sufficient cause existed to terminate Jones. The Commission explicitly found the Chief was making a policy change by imposing stricter discipline than traditionally had been imposed for inappropriate off-duty behavior. The Commission also explicitly found that training and communication regarding the policy change were not in place before Jones's off-duty incident. The Commission unanimously concluded that the Chief had abused his discretion when he terminated Jones and ordered the Chief to reinstate Jones immediately.

The Chief was present when the Commission issued its decision, but he waited more than seven weeks to reinstate Jones. During that time, Jones attempted to negotiate with the Chief and the City. Jones offered to accept lesser disciplinary measures if the City would waive its right to appeal the Commission's reversal of the Chief's termination decision. The City and the Chief, however, remained intransigent. The Chief eventually placed Jones on the duty roster and the payroll. Approximately one month after reinstating Jones, the Chief modified his original discipline of termination and suspended Jones retroactively for six months and one week without pay. The suspension was retroactive to the date of termination and ended on the date of reinstatement. Jones appealed the Chief's suspension to the Commission.

The Commission heard Jones's second appeal and vacated the Chief's suspension. The Commission determined the Chief's suspension was, in effect, rediscipline for the same conduct. The Commission ruled the Chief's only recourse following its first order was to pursue a solution with Jones or to appeal the order to this Court. The City now petitions for review.

## ISSUE

The City's petition presents a single dispositive issue for our review: whether the Commission's reversal of a department head's decision is final regardless of whether it was based on the propriety or the proportionality of the department head's discipline.[2]

## STANDARD OF REVIEW

■ We review the Commission's final action or order "for the purpose of determining if the commission has abused its discretion or exceeded its authority." Utah Code Ann. § 10-3-1012.5 (1992). Our review is limited to "the record of the commission." *Id.* "Discretion may best be viewed as an arena bounded by the law, within which the [Commission] may exercise its judgment as it sees fit." *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 26 (Utah App.1991). Unless the Commission "has stepped out of the arena of discretion and thereby crossed the law," *id.* at 27, we will affirm the Commission's order. *See id.; see also State v.*

---

**2.** Because we conclude the Commission did not exceed its statutory authority, when it vacated the Chief's suspension of Jones, we do not address the several sub-issues in the City's petition that also essentially question whether the Commission exceeded its authority.

We further note the Commission did not abuse its discretion when it ruled that matters related to the retroactive suspension of Jones's Peace Officer Standards and Training (POST) certificate were irrelevant to Jones's second appeal. Accordingly, we decline to address the City's argument about Jones's POST certification. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989) (holding appellate courts may decline to address arguments without merit).

*Pena*, 869 P.2d 932, 939 n. 5 (Utah 1994) (observing appellate courts review placement of legal fences limiting pasture of discretion).

## THE CIVIL SERVICE COMMISSION'S AUTHORITY

■ The City contends the Commission exceeded its statutory authority when it ruled the Chief could not modify his original discipline after the Commission had determined firing Jones was an abuse of the Chief's discretion. The City suggests, in other words, the Commission should in effect remand disciplinary matters to the department head for lesser punishment when it concludes the sanction is disproportionate to the charges. The Commission argues that its authority is limited to affirming or reversing department heads' disciplinary actions and that its decisions are final. The Commission argues its order reversing the Chief's disciplinary action was final and should have been immediately enforced.

■ Our analysis begins with an important premise: the Commission, "like other tribunals of limited jurisdiction, can exercise only such powers as are conferred upon it by statute." *Piercey v. Civil Serv. Comm'n*, 116 Utah 135, 141, 208 P.2d 1123, 1126 (1949). Utah cities of the first and second class [3] must establish a three-member civil service commission. Utah Code Ann. § 10–3–1003 (1992). The Commission regulates employment in the police, fire, and health departments; it monitors hiring, promotion, suspension, and termination in those city agencies. *See id.* §§ 10–3–1001 to –1011. The Commission is also authorized to hear appeals of department heads' suspension and termination decisions. *See id.* §§ 10–3–1012 to –1012.5.

The statute that creates and governs the Commission provides as follows regarding appeals by suspended or discharged employees:

Any person [in the classified civil service] suspended or discharged may, within five days from the issuance by the head of the department of the order suspending or discharging him, appeal to the civil service commission, *which shall fully hear and determine the matter.* The suspended or discharged person shall be entitled to appear in person and to have counsel and a public hearing. The finding and decision of the civil service commission upon the hearing shall be certified to the head of the department *from whose order the appeal is* taken, and *shall be final and immediately enforced by him.*

*Id.* § 10–3–1012 (emphasis added). The present case turns on the proper interpretation of this statutory section.

■ "When faced with a question of statutory construction, we look first to the plain language of the statute." *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994). Utah courts "assume that 'each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.'" *Id.* (quoting *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991)). Moreover, "courts are not to infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and the court has no power to rewrite the statute to conform to an intention not expressed." *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994).

Section 10–3–1012's plain language states the Commission "shall fully hear and determine" appeals of suspension or termination brought by civil service employees. The statute also states that the Commission's order "shall be final and immediately enforced by [the department head]." These two phrases make plain that the Commission's decisions are final. The statute requires the Commission to provide closure for disciplinary disputes. The Commission fully hears and determines appeals of suspension and termination; therefore, its rulings represent the end of civil service disciplinary disputes. The statute does not authorize the Commission to modify suspension or termination de-

---

**3.** Utah cities are divided according to population into cities of the first, second, and third classes.

*See* Utah Code Ann. § 10–2–301 (1992).

cisions or to remand such decisions for further proceedings.[4] The statute therefore restricts the Commission to a simple thumbs up or thumbs down on the Chief's suspension and termination decisions.

■■ Put another way, pursuant to its statutory authority, the Commission must make two inquiries when reviewing appeals brought by suspended or discharged employees: "(1) do the facts support the charges made by the department head, and, if so, (2) do the charges warrant the sanction imposed?" *In re Discharge of Jones,* 720 P.2d 1356, 1361 (Utah 1986). Thus, the Commission determines first whether discipline is appropriate and second whether the particular discipline meted out is proportionate to the offense. When the Commission determines either that the offense does not warrant discipline or that the discipline meted out is disproportionate to the offense, it must reverse the department head's decision. And, under the statute, the Commission's reversal of a department head's disciplinary decision is final.

The Utah Supreme Court previously has interpreted the Commission's statutory authority and held that the Commission may not substitute its disciplinary judgment for that of the Chief. *Vetterli v. Civil Serv. Comm'n,* 106 Utah 83, 91, 145 P.2d 792, 796 (1944).[5] In *Vetterli,* the Salt Lake City Police Chief fired a police officer because the officer was absent without leave. *Id.,* 145 P.2d at 793. Acting upon the officer's appeal, the Commission made findings supporting the Chief's charges; however, it concluded termination was too severe a penalty. *Id.,* 145 P.2d at 794. The Commission modified the discipline and ordered the officer suspended for six months without pay. *Id.* In construing the statute authorizing the Com-

mission to hear appeals of termination, the *Vetterli* court made the following pronouncement:

> The civil service commission is made the ultimate authority to determine whether the discharge should or should not stand. To this end, the commission is given the authority and duty to "fully hear and determine the matter." That is, it is to accord a full hearing to the appellant and to the department head as to the truth or falsity of the charges made, and thereupon to determine whether to affirm or to set aside the order made. *We do not find in our statute any phrase which grants the same jurisdiction on appeal as is conferred where the power on appeal is to "affirm, modify or reverse,"—an expression usually if not universally employed where such authority is actually conferred.* The substitution of suspension for six months without pay, in lieu of dismissal, was beyond the power of the commission.

*Id.,* 145 P.2d at 796 (emphasis added). The *Vetterli* court's construction of the statute therefore confirms the Commission can neither modify the Chief's discipline nor remand the matter for further consideration.

Furthermore, the *Vetterli* court held "that the power conferred on the commission to 'determine the matter' brought before it on appeal, is the power to determine the *sufficiency of the cause of removal,* and not simply to adjudge whether the cause alleged by the department head is true." *Id.,* 145 P.2d at 797. *Vetterli* thus articulates the Commission's two principal inquiries: (1) whether the employee's offending behavior warrants discipline, and, if so, (2) whether the department head's discipline is proportionate to the

---

4. The Commission promulgates rules and regulations to carry out its functions in municipal government. *See* Utah Code Ann. § 10–3–1006 (1992). The Commission's rules are consistent with the statute's plain language, providing in relevant part:

 [T]he Commission shall make and enter a findings of fact and conclusion of law [sic] and final decision in the appeal. The decision shall be certified to the department Chief and it must then be enforced and followed by the department Chief.... *The Commission shall*

*be limited to either affirming or reversing the Chief's decision.*
Salt Lake City Civil Service Commission Rules and Regulations, R. 7–6–7 (emphasis added).

5. The *Vetterli* court construed a predecessor of Utah Code Ann. § 10–3–1012 (1992). That statute was identical to § 10–3–1012 except it only authorized the Commission to review an officer's discharge from service. Section 10–3–1012 authorizes review when an officer is suspended or discharged from service.

offense. *See id.; Jones,* 720 P.2d at 1361. We reiterate: if the Commission answers no to either of these inquiries, it must reverse the department head's action.

In the present case, the Commission determined discipline was warranted; however, it ruled termination was such a disproportionate penalty that it was an abuse of the Chief's discretion. Accordingly, the Commission properly reversed the Chief's termination and ordered Jones reinstated. The Commission's decision was final, and the Chief should have immediately enforced that decision. Neither the statute nor the common law authorizes the Chief to modify his disciplinary decisions once the Commission has reversed those decisions. After the Commission reversed the Chief's termination decision and ordered Jones reinstated, the Chief's only statutorily approved recourse was an appeal to this Court. *See* Utah Code Ann. § 10–3–1012.5 (1992).

 The Commission thus is authorized to determine not only the propriety but also the proportionality of the Chief's discipline. The Commission "is not compelled to sustain the department head in every case where it finds the charge substantiated. The commission has the power to determine the sufficiency of the cause of removal and not merely adjudge whether the cause alleged by the department head was true." *Worrall v. Ogden City Fire Dep't,* 616 P.2d 598, 602 (Utah 1980) (plurality opinion) (citing *Vetterli,* 145 P.2d at 797). The Commission ensures a department head's disciplinary decisions are both proper for and proportionate to the alleged wrongdoing. The Commission's deci-

sions are final, and the Commission's decisions fully determine the matter.

 In sum, under the current statutory scheme, we conclude once the Commission determines a disciplinary decision is disproportionate, the department head may not discipline the employee again in a second effort to make the discipline proportionate to the offense.[6]

## CONCLUSION

 We hold the Commission's authority is limited to affirming or reversing department heads' decisions upon appeals by suspended or terminated civil service employees. The Commission cannot modify the department head's decision or remand the matter to the department head for further consideration. The Commission must fully hear and determine appeals brought before it, and its decisions are final and must be immediately enforced by the department head.

The Commission correctly viewed the Chief's suspension of Jones as rediscipline for the same incident and correctly vacated that decision as inconsistent with its previous order. Accordingly, we affirm the Commission's order vacating the Chief's suspension of Jones.

DAVIS, Associate P.J., and WILKINS, J., concur.

---

6. Invoking a separate statutory section, the City argues the Chief of Police "may at any time suspend any subordinate officers." Utah Code Ann. § 10–3–912(1) (1992). However, once the Chief has exercised his authority and disciplined an officer for inappropriate conduct, the Commission determines the propriety and propor-

tionality of that discipline if the officer appeals. *See id.* § 10–3–912(2). The City similarly argues sound management policy requires that the Chief have ultimate authority over police discipline. The City's arguments might be persuasive before the legislature, but we are bound by the statute as it exists today.