429 P.2d 49

**UTAH PLUMBING AND HEATING CONTRACTORS ASSOCIATION et al., Plaintiffs and Appellants,**

**v.**

**BOARD OF EDUCATION OF WEBER COUNTY SCHOOL DISTRICT, Defendant and Respondent.**

**No. 10503.**

Supreme Court of Utah.

June 6, 1967.

Mabey, Ronnow, Madsen & Marsden, Salt Lake City, for appellants.

Samuel C. Powell, Ogden, for respondent.

CROCKETT, Chief Justice:

Plaintiffs, an organization of plumbing contractors and three other trade associations, including some from Weber County, sued to enjoin defendant Weber County Board of Education from installing a sprinkling system on the Roy High School football field. Plaintiffs contend that the defendant's use of its own maintenance employees to put in the sprinkling system was a violation of Section 53-11-1, U.C.A.1953, which requires advertising for bids "[w]henever any schoolhouse is to be built" or any improvement constructed costing over $20,000.

The pertinent facts viewed in the light favorable to the trial court's findings are these: The School District was short of finances. In fact, it had waited long past the time the school was needed before arranging for its construction. Because it did not have enough money, it did not include in the project as advertised for bids some items which might be included later. Examples are: some interior walls, seating in an auditorium, tile floor coverings in

sóme areas, lighting on the football field, tennis courts and the sprinkling system in question. It was also shown that with respect to the latter item, similar economies were effected in two other schools in the District, by not installing a sprinkling system and by using movable surface watering systems instead.

After the contract for the school had been awarded and construction was well under way, additional funds from the State became available. It was then that the School Board decided they should install the sprinkling system on the football field at the least possible cost. By advertising for bids for the materials only, and using their regularly employed maintenance people during their free time from other duties, the job could be done for approximately $3200, about $2700 of it for materials, which they purchased from the lowest bidder.

The position essayed by plaintiffs is that the board was obliged to consider the sprinkling system as part of the "building of the schoolhouse" which cost $2,600,000, and that it should have been included in the advertisements for bids for its construction; or alternatively, even though constructed later, it still must be considered as part of the entire project and advertised for bids.

In considering whether the trial court erred in refusing to find that the defendant Board had acted to circumvent the statutory requirements, there are certain principles which it is well to have in mind. The powers of the Board of Education are derived from statute and consist only of those expressly granted or those reasonably implied as necessary to carry out the duties imposed upon it.[1] A number of sections of our code grant authority to school boards for the construction and maintenance of facilities for the operation of public school systems.[2] Under the heading, "Further Powers of Boards of Education," Section 53–6–20, U.C.A.1953, provides:

> Every board of education shall have power * * * *to construct and erect school buildings* and to furnish the same, * * * to purchase, exchange, repair and improve high school apparatus, books, furniture, fixtures and all other school supplies. It * * * may *do all things needful for* the maintenance, prosperity and *success of the schools*, and the *promotion of education*; * * *.

The extensive discretion reposed in the school board by this section is apparent.

We are aware that in decisions construing the powers of school districts, the

1. Allen v. Board of Ed. of Weber County School Dist., 120 Utah 556, 236 P.2d 756 (1951); Beard v. Board of Ed. of North Summit School Dist., 81 Utah 51, 16 P.2d 900 (1932).

2. Sections 53–4–8, 53–6–20, 53–7–23, 53–9–1, 53–11–22, 53–11–37, U.C.A.1953.

terms "school building" and "schoolhouse" are often given a broad meaning to encompass the entire functioning school plant, including athletic facilities.[3] However, from this fact and the fact that under the grants of power to the board of education just referred to above, it has authority to construct and maintain athletic facilities, it does not necessarily follow that the sprinkling system in question must be regarded as coming within the language of Section 53–11–1, first referred to above, requiring bids "[w]henever any schoolhouse is to be built." Whether it does or not may depend upon the circumstances. For example, it seems quite obvious that if the schoolhouse itself has already been built, the construction of some additional facility or improvement to the school plant, such as the installation of some additional blackboards, visual aid equipment, or of a sprinkling system in the athletic field, would not be within the meaning of the phrase "building a schoolhouse." If it were so, the school administration would often be hampered in adapting school buildings and facilities to changing needs such as supplying the deficiencies listed above in this very building

with which we are concerned. This would be squarely contrary to the plain intent of Section 53–6–20, above quoted which authorizes the Board to improve apparatus, books, furniture, fixtures and do all things needful for the maintenance, prosperity and success of the schools, and the promotion of education.

We have but recently pointed out that under our statutes the board of education is intended "to have plenary powers in administering the affairs of the school district." In Ricker v. Board of Education of Millard County School District, this court said:

> The duties of the board include that of purchasing schoolhouse sites and erecting and remodeling school buildings. * * * [I]t is inherent in the nature of the board's function in managing school district business *that it have a broad latitude of discretion* in order to carry out its objective of providing the best possible school system *in the most efficient and economical way.* * * *[4]

Recognition of the necessity of such latitude of discretion is shown in Section 53–

3.  47 · Am.Jur. Schools, Sec. 5 (1943); School Bd. of School District No. U2–20, Jt.; Multnomah County v. Fanning, 232 Or. 593, 377 P.2d 4 (1962); Nicholas v. Calhoun, 204 Miss. 291, 37 So.2d 313 (1948); Board of Ed. of City of Asbury Park v. Hoek, 38 N.J. 213, 183 A.2d 633 (1962); Alexander v. Phillips, 31 Ariz.

·      503, 254 P. 1056, 52 A.L.R. 244 (1927). Contra see Board of Ed. of Louisville v. Williams, 256 S.W.2d 29 (Ky.1953).
4.  16 Utah 2d 106, 396 P.2d 416 (1964); see also Allen v. Board of Ed. of Weber County School Dist., supra note 1; Beard v. Board of Ed. of No. Summit School Dist., supra note 1.

11–1 which exempts from the requirements of bids, projects costing less than $20,000.[5]

■ The principle that the School Board may not fragment a building contract into separate units to avoid the requirement of bids nor otherwise circumvent the requirements of the statutes is sound. From what we have said it should be apparent that as we view the evidence there is a reasonable basis therein to substantiate the trial court's refusal to find that the defendant Board did so. On the other hand, the evidence supports its findings to the contrary. Pertinent to this issue is the fact that the Board did request bids on the pipe and materials and bought them from the lowest bidder. This is evidence of its good faith and its desire to properly and lawfully perform its duty in administering the school system in "the most efficient and economical" manner possible. It is our opinion that its initiative and frugality in the premises should be approved and commended, rather than censured.

■ We have based our decision in this case on the issues hereinabove discussed because they appear to be of some importance and because they are at the heart of the controversy concerning which the parties resorted to the court for determination. This resolution of the matter renders it unnecessary to consider other and collateral issues raised by the defendant.[6] (All emphasis added.)

Affirmed. Costs to defendant (respondent).

TUCKETT, J., concurs.

ELLETT, Justice (concurring):

I concur with the Chief Justice, but in doing so I would not have this case to be considered as any authority for the proposition that the plaintiffs have standing to maintain this action.

The case was initiated originally to restrain the defendant from constructing a sprinkling system for a football field. This work has now been completed, and so this appeal presents to us a moot question.

At trial the defendant made two contentions by way of defense in this matter, namely:

5. Utah Sess.Laws 1963, Ch. 90, Sec. 1. The statute as amended in 1963 retained the language of its predecessor in limiting to one the number of advertisements required for building costs less than $5,-000, even though the new statute doesn't require advertisement at all for projects costing less than $20,000 minimum. This conflict was apparently overlooked in amending the section. Under the findings and determination of the trial court, which are supported by the evidence here, it matters not whether advertising would have been necessary under the requirement of $5,000, or $20,000 of the somewhat ambiguous statute.

6. See National Electric Contractors Ass'n. v. Seattle School Dist. No. 1, 66 Wash. 2d 14, 400 P.2d 778 (1965), where under facts similar to ours the court discussed and adjudicated such issues.

(1) The plaintiffs were not taxpayers and, therefore, had no standing to bring this suit.

· (2) Section 53–11–1, U.C.A.1953, did not prevent the School Board from installing the sprinkling system.

The trial court ruled that plaintiffs were taxpayers and did have standing to maintain the action but held that the statute quoted did not prevent the defendant from doing the work of installing the sprinkling system.

Although counsel for the defendant refused to specifically waive his contention of lack of standing on the part of plaintiffs, nevertheless at oral argument he requested us to rule upon the merits of the case, and in doing so I think he in effect did waive that contention.

The trial court had jurisdiction of the parties and the subject matter involved herein. There is nothing jurisdictional about this matter; and if defendant in effect waived its contention regarding the standing of the plaintiffs, the findings of the trial court in that regard would be binding upon us, and we should rule upon the merits of this case so as to lay down guidelines to be followed in the future when situations similar to this confront school boards.

I would, therefore, affirm the judgment of the trial court.

CALLISTER, Justice (dissenting) :

I am in complete agreement with the main opinion's analysis of the facts and application of the law. However, I am compelled to dissent because the main opinion is nothing but a gratuity—the issues discussed and decided therein are moot. This, for the reason that the plaintiffs are not real parties in interest and have no standing to initiate or maintain this action.[1]

The four plaintiffs are voluntary trade associations, conducting their business as nonprofit corporations. As such, they have the right to sue or be sued.[2] But, they do not have the right to maintain or initiate this action for themselves or for their members.

To begin with, plaintiffs have no direct interest in the School Board's action of which they complain, or in the outcome of this litigation. They are not contractors and could not have participated had the Board submitted the sprinkling system job to bid. Plaintiffs' standing must be determined solely by their interests and not those of their individual members.[3] They must show, which they cannot, that the position asserted is one to enforce an obliga-

1. This defect was presented to the lower court and has been made a point on appeal. · · ·
2. 16–6–22(2), U.C.A.1953 (supp.).

3. Windsor Hills Imp. Assn., Inc. v. Mayor and Council of Baltimore, 195 Md. 383, 73 A.2d 531 (1950).

tion to themselves, but not one to enforce the separate property rights of their individual members.[4]

Nor can plaintiffs qualify as a representative[5] in a taxpayer's class action. The plaintiffs are not domiciled nor do they own any real property in Weber County and, therefore, do not pay taxes to the County or the School District.[6] They are not on the tax rolls of Weber County. Obviously, the plaintiffs pay a state sales tax upon items which they purchase or services which they require. It was upon the basis of plaintiffs' payment of sales tax that the lower court concluded that they had standing to bring this suit to the courts.

The revenue from the state sales tax goes into the general fund. From there it is appropriated, along with revenue from other sources, by the legislature to various state departments or functions. One of these is the uniform school fund, from which the defendant receives a certain allocated amount which is determined by a statutory formula. Also, the legislature has directed sums from the general fund to aid local school districts in building new schools and in capital improvements—again, according to a statutory formula.

Thus, it must be conceded that the interest of plaintiffs in the action of the School Board is extremely remote—especially from a pecuniary standpoint. Plaintiffs have not alleged, nor have they proved any pecuniary loss. This is a fatal defect to their standing as a real party in interest.[7] Their interest, if any, is infinitesimal and de minimus.

Finally, this court has stated:[8]

* * * For a court of equity to grant relief when the injury threatened is more theoretical and imaginary than real and substantial, as it appears in this case, * * * would be an unauthorized use, if not an abuse, of power.

For the foregoing reasons, the appeal should be dismissed.

HENRIOD, Justice (dissenting):

I dissent, and concur in the dissent of Mr. Justice Callister, to the effect that the plaintiffs here have no standing as litigants in this court.

Mr. Chief Justice Crockett avoids the jurisdictional aspect of this case entirely, by ignoring it. In doing so, he talks about a case, on the merits, which is not even before

4. South Carolina Council of Milk Producers, Inc. v. Newton, 241 F.Supp. 259 (E.D., S.C., 1965); Alabama Independent Service Station Assn. v. Shell, 28 F.Supp. 386 (D.C., N.D.Ala., 1939); Utah Citizens Rate Assn. v. United States, 192 F. Supp. 12 (D.C.Utah, 1961).
5. Rule 23(a) U.R.C.P.

6. Some members of plaintiff associations are probably Weber County taxpayers, but they did not bring this suit.
7. Lyon v. Bateman, 119 Utah 434, 228 P.2d 818 (1951).
8. Tanner v. Nelson, 25 Utah 226, 239, 70 P. 984, 989 (1902).

us, and shuns this court's decision in Anderson v. Anderson, 3 Utah 2d 277, 292 P.2d 845 (1955), where this court, without anyone having raised a jurisdictional point even, sua sponte, said the parties were not before the court,—period. In the instant case the jurisdictional aspect *was* raised. Why the difference in the two cases?

My learned colleague, Mr. Justice Ellett, in a doubtful "concurring" opinion, expresses the jurisdictional doubts I have, but says that 1) the importance of laying down guidelines; 2) that the case is moot anyway; 3) that counsel requested us to give an opinion irrespective of whether we had jurisdiction or not; and 4) that we are bound by the trial court's assumption of unjurisdictional jurisdiction, we should assume it.

Neither reason is defensible.

As to 1): We do not need to lay down guidelines in this case, since the only sensible guideline is that if you aren't in court you aren't in court.

As to 2): That the case is moot: If it is moot, why fuss about it?

As to 3): That counsel asked us to decide the case even though we have no jurisdiction: This is something I never heard of in this State, and nothing I ever heard of in law school,—something akin to the Boy Scouts asking us to tell them why they don't get more from the United Fund.

When it is said 4): "The trial court had jurisdiction of the parties * * * There is nothing jurisdictional about this matter" and that we are bound by the findings of the trial court,—this just isn't so. The trial court can't say I have jurisdiction, if it doesn't have jurisdiction. The Boy Scouts are out anyway. If this court has to rely on the findings of a trial court as to jurisdiction, we are out in left field reading a page torn out of the Constitution, striking a match to it, then lying down and sleeping in the comfortable warmth of its burning.