**In the Matter of the DISCHARGE OF Wayne L. JONES.**

**Appeal of TOOELE COUNTY, Appellant.**

**No. 19238.**

Supreme Court of Utah.

June 2, 1986.

Ronald L. Elton, Tooele Co. Atty., Brad Hunsaker, Deputy Co. Atty., Tooele, for appellant.

David E. Yocom, Salt Lake City, for respondent.

BILLINGS, District Judge:

On February 18, 1982, Deputy Sheriff Wayne L. Jones was discharged by the Tooele County Sheriff pursuant to U.C.A., 1953, §§ 17–30–18(a), (c), and (e).[1] The sheriff charged Deputy Jones with improperly taking a truck and a motorcycle from a prisoner, submitting falsified reports, and illegally removing a license plate from an impounded vehicle and using it on the truck taken from the prisoner. In this case, the sheriff appeals a decision of the district court affirming the Tooele County Deputy Sheriffs' Merit Commission's (Merit Commission) reinstatement of Deputy Jones. We reverse.

The sheriff claims that the district court erred in affirming the Merit Commission's Finding of Fact No. 1 because it was not supported by the evidence. He also claims that the Merit Commission improperly modified his decision to terminate Deputy Jones, since it only has the power to affirm or reverse his action. Because our decision concerning the findings of fact disposes of this case, we do not reach the issue of the scope of the Merit Commission's authority. *Utah Plumbing and Heating Contractors Association v. Board of Education*, 19 Utah 2d 203, 429 P.2d 49 (1967); *see also, e.g., Johnson v. Morris*, 87 Wash.2d 922, 557 P.2d 1299 (1976).

On January 26, 1981, Douglas McArthur Jones was arrested and jailed in Wendover, Utah, for loitering and driving without a license. He was en route to San Francisco from Wyoming, where he had just purchased a motorcycle and a truck. At the jail, Deputy Jones confiscated documents from Douglas Jones which indicated that the truck had been purchased for $970 down with a $330 balance remaining and the motorcycle had been purchased for $1,895, for a total of $3,195. Douglas Jones had run out of money and asked Deputy Jones if he could pledge his truck and motorcycle for bail. The evidence at this point is conflicting. Douglas Jones claims that Deputy Jones had him sign three or four papers, released him from jail, gave him $10 and his bags, and took him to the highway to hitchhike to San Francisco. When Douglas Jones returned to Wendover about a month later to pick up his truck and motorcycle, Deputy Jones informed Douglas that Douglas had sold his motorcycle and truck to Deputy Jones. Deputy Jones, on the other hand, claims that Douglas Jones begged him to buy the vehicles for the $100 bail so that he could get out of jail.

Deputy Jones obtained title to the motorcycle from the Wyoming dealer. He thereafter washed the motorcycle, obtained a cover for it, and sold it for $1,100. The truck dealer, however, was in bankruptcy and the bank would not release the title even when Deputy Jones tendered the $330 balance. After driving the truck with temporary permits, Deputy Jones attempted to obtain title to the truck by submitting a falsified back-dated impound report, alleging that the truck was abandoned or stolen. Still unsuccessful, in September or October, 1981, Deputy Jones took license plates from an impounded vehicle and put them on the truck. Subsequently the owner of the impounded vehicle filed a report with Deputy Jones that the license plates had been stolen. Deputy Jones, however, did not acknowledge in his report that he was using the plates for his personal benefit. He thereafter removed the plates from the truck, but replaced them a short time later.

---

1. Section 17–30–18 states:

   (1) A merit system officer holding a permanent appointment may be demoted, reduced in pay, suspended, or discharged for:
   (a) Neglect of duty;
   (b) Disobedience of a reasonable order;
   (c) Misconduct;
   (d) Inefficiency, or inability to satisfactorily perform assigned duties;
   (e) Any act inimical to the public service.
   (2) No officer shall be suspended for more than thirty days at one time, nor more than sixty days in one year. Demotion, reduction in pay, suspension, or discharge shall be made upon order of the appointing authority.

   This Court has recognized that a sheriff may dismiss a deputy for misconduct. *Hutchison v. Cartwright*, Utah, 692 P.2d 772, 773 (1984).

The plates remained on the truck until November 26, 1981, when they were removed by an investigator from the Attorney General's office.

Because of this episode and several other claimed infractions, the sheriff discharged Deputy Jones on February 18, 1982.

I.

Deputy Jones appealed his discharge to the Merit Commission pursuant to U.C.A., 1953, § 17–30–19.[2] The Commission held a hearing and received evidence on four of the five counts filed with the Commission by the sheriff.[3] Counts I and II[4] of the charges stated:

(I) During the later part of January, 1981, Deputy Wayne L. Jones improperly and/or illegally acquired personal property from a prisoner at the Tooele County Jail in Wendover, Utah. Said property included a truck and motorcycle. Jones obtained the property so the prisoner could post a $100.00 bond and be released from incarceration. Thereafter, Jones improperly and/or illegally disposed or maintained possession of said property and made false reports concerning the same.

(II) During 1981, Wayne L. Jones was unable to register in the State of Utah the truck acquired from the prisoner as is mentioned in paragraph (I) above. Wayne L. Jones, then illegally took possession of license plates from another truck owned by the John Paras Furniture Company. That truck had been impounded by the Highway Patrol for safe keeping at Wendover, Utah. Jones used said license plates on the truck he had taken from the prisoner. Jones was subsequently notified about the missing license plates, but never told the John Paras employee making the report or the Sheriff's Department that he had possession of and was using the plates. Jones used said plates from at least October 16, 1981 to November 25, 1981, when they were removed from the prisoner's truck which was in Wayne L. Jones' possession.

As to Counts I and II, the Commission found:

1. We find, based on a preponderance of the evidence, that during the latter part of January, 1981, Deputy Wayne L. Jones did not improperly and/or illegally acquire personal property from the prisoner at the Tooele County jail in Wendover, Utah, and do not find that Jones obtained the property at a fraction of its value and took said property so that prisoner could post a $100.00 bond and be released from incarceration. We do not find that Jones improperly and/or illegally disposed or maintained possession of said property, but find that he did make misleading reports concerning the same on the impound report and the missing license plate.

2. We find, based on preponderance of the evidence, that during 1981, Wayne L. Jones illegally took possession of license plates from a truck owned by the John Paras Furniture Company after

**2.** Section 17–30–19 states:

Upon the demotion, reduction in pay, suspension or discharge of a merit system officer for any cause set forth in section 17–30–18, the person ordering the demotion, reduction in pay, suspension, or discharge shall file written charges with the commission, and shall serve the officer with a copy thereof. In the absence of an appeal, copies of such charges shall not be made public without the consent of the charged officer. The officer, within ten days after service, may appeal in writing to the commission. The commission shall fix a time and place for a hearing upon the charges, which shall not be less than five nor more than twenty days after appeal is filed, and notice of which shall be given to the parties. If the aggrieved officer so desires, the hearing shall be public, and the parties may be represented by counsel. After the hearing the commission shall make its decision in writing, including therein findings of fact, and shall mail a copy to each party.

**3.** Count IV was dismissed prior to the Merit Commission hearing.

**4.** The Merit Commission found that Counts III and V were not supported by the evidence. These findings were affirmed by the district court and are not challenged by the sheriff on this appeal.

that truck had been impounded by the Highway Patrol for safekeeping at Wendover, Utah. We find that Jones used said license plates on the truck he had purchased from the prisoner and that Jones used said plates from at least October 16, 1981, to November 1981, when they were removed from the truck which was in Wayne L. Jones' possession. We do not find that this represented a felony, but was a misdemeanor.

Based on its findings, the Merit Commission voted to reinstate Deputy Jones without back pay. In effect, the Commission's decision amounted to a two-month suspension of Deputy Jones.

Within 30 days of the Merit Commission's order, the sheriff filed a petition for a writ of certiorari with the district court pursuant to Rules 65B(b)(2) and 65B(e) of the Utah Rules of Civil Procedure. On review, the district court affirmed the Merit Commission's findings. It also determined that the Merit Commission had power to modify the sheriff's discharge of Deputy Jones and therefore also affirmed the Merit Commission's reinstatement of Deputy Jones.

■ The district court granted the petition despite Deputy Jones' contention that a petition for certiorari was improper because the sheriff was an aggrieved party and therefore had a statutory right to appeal pursuant to U.C.A., 1953, § 17–30–20.[5] An "aggrieved party" must be both a party to the proceeding and one who is prejudiced or affected by the order. *McGough v. Insurance Company of North America,* 143 Ariz. 26, 691 P.2d 738, 741 (Ariz.App.1984); *Montalvo v. Chang,* 64 Hawaii 345, 641 P.2d 1321, 1326 (1982). The sheriff in this case was clearly an aggrieved party. He discharged Deputy Jones. The Merit Commission's order reinstating Deputy Jones affects the sheriff, as he and his department would be required to work with a person the sheriff apparently believed was not qualified to serve as a deputy sheriff. The sheriff had a statutory right to appeal. However, the fact that the sheriff sought review of the Merit Commission's order in the district court by way of a petition for writ of certiorari rather than by notice of appeal was harmless error. The sheriff's petition was filed within the time limit to file a notice of appeal and therefore preserved his right to a review of the Merit Commission's decision. Further, a writ of certiorari, as it results in a review of the entire record, is the review that would have been afforded on appeal. Utah R.Civ.P. 65B(e).

■ Again in 1983, Deputy Jones was terminated by the sheriff for further misconduct and the Merit Commission upheld his termination. The 1983 termination does not moot this appeal, however, because Deputy Jones appealed his second termination to the district court, where the matter is still pending. As long as the 1983 termination is pending before the district court, there is a possibility that the district court could modify the Merit Commission's decision and reinstate Deputy Jones. *See Franklin Financial v. New Empire Development Co.,* Utah, 659 P.2d 1040 (1983); *Cullimore v. Schwendiman,* Utah, 652 P.2d 915 (1982).

■ On appeal from the judgment of a district court acting as an appellate court, this Court reviews the underlying administrative decision just as if it had come directly from the administrative agency. *Bennion v. Utah State Board of Oil, Gas & Mining,* Utah, 675 P.2d 1135, 1139 (1983). This is consistent with the standard of review set forth in section 17–30–20, that "[t]he *courts* may review questions of law and fact and may affirm, set aside, or modify the ruling complained of." (Emphasis added). The statute grants to this Court the same broad review granted to the district court. Therefore, we need give

**5.** Section 17–30–20 states:

A person aggrieved by an act or failure to act of any merit system commission under this act may appeal to the district court, if he has exhausted his remedies of appeal to the commission. The courts may review questions of law and fact and may affirm, set aside, or modify the ruling complained of.

no deference to the district court's decision in this case.

## II.

■ The Merit Commission's authority on review of disciplinary decisions involves two inquiries: (1) do the facts support the charges made by the department head, and, if so, (2) do the charges warrant the sanction imposed? *Vetterli v. Civil Service Commission of Salt Lake City,* 106 Utah 83, 90, 145 P.2d 792, 796 (1944).[6]

The sheriff claims that the district court erred in holding that the evidence supported the Commission's Finding of Fact No. 1. On full examination of the record, it is clear that the evidence supports the sheriff's charges, and in part, at least, Finding of Fact No. 1 is unsupported by the evidence.

Finding of Fact No. 1, set forth above, contains three conclusions not supported by the record: (a) that Deputy Jones did not illegally or improperly acquire the vehicles from Douglas Jones, (b) that Deputy Jones did not obtain the vehicles at a fraction of their value, and (c) that Deputy Jones did not illegally or improperly maintain possession of or dispose of the vehicles.

■ First, although Deputy Jones may not have actually violated the letter of Utah's criminal code when he acquired the vehicles from Douglas Jones, his actions were unquestionably improper and cannot be tolerated.[7] His behavior was in violation of the express terms of both the Law Enforcement Code of Ethics and the Policies and Procedures Manual of the Tooele County Sheriff's Office. *See Hutchison v. Cartwright,* Utah, 692 P.2d 772, 773 (1984).

The Law Enforcement Code of Ethics states, among other things, that a police officer will "protect the innocent against deception." It also states, "I will keep my private life unsullied as an example to all"

6. The *Vetterli* standards on the scope of commission review are applicable in this case. However, the *Vetterli* holding denying that commission the right to modify the police chief's decision is distinguishable from this case. *Vetterli* involved the interpretation of a statute, now repealed, which gave the reviewing commission narrower authority to review a sheriff's disciplinary decision than does section 17–30–19. The statute involved in *Vetterli* gave the chief of police authority to "remove" an officer or suspend him for up to 15 days. The Civil Service Commission was granted authority to review decisions of the chief of police to remove an officer but had no authority to review decisions to suspend.

The statutory scheme involved in the instant case places broader authority in the Merit Commission to review disciplinary decisions than did the statute in *Vetterli.* Section 17–30–19 gives the Merit Commission authority to review not only decisions to discharge a deputy but also to review and decide upon decisions to suspend. The apparent intent of the statute is to grant to the Merit Commission greater authority in reviewing disciplinary decisions than was available to the Civil Service Commission in *Vetterli.*

7. Section 76–6–404 states: "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Deputy Jones unquestionably exercised control over the vehicles, intending to deprive Douglas Jones of the property. The evidence, however, is conflicting as to whether Deputy Jones' control over the vehicles was authorized. The evidence indicates that Deputy Jones at least acted recklessly as defined in section 76–2–103(3) in setting up the deal with Douglas Jones.

Deputy Jones' behavior also comes dangerously close to that proscribed in section 76–6–405, which states that "[a] person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." Deputy Jones told Douglas Jones that it was not possible in Utah to pledge property in payment of bail. Deputy Jones claims that he did not know that this was possible in Utah, although it has been a widespread practice for a number of years. Furthermore, Deputy Jones told Douglas Jones that his bail was $200, even though bail had not been set for Douglas Jones, and even though the bail amount paid was only $100.

The confiscation of a prisoner's property by prison officials without due process can give rise to a cognizable claim under 42 U.S.C. § 1983. *Clayton v. Shaw,* 548 F.2d 1155 (5th Cir.), *cert. denied,* 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 153 (1977); *Kimbrough v. O'Neil,* 523 F.2d 1057 (7th Cir.1975); *Carter v. Estelle,* 519 F.2d 1136 (5th Cir.1975); *Hansen v. May,* 502 F.2d 728 (9th Cir.1974). *See also Koen v. Long,* 302 F.Supp. 1383, 1391 (E.D.Mo.1969), *aff'd per curiam,* 428 F.2d 876 (8th Cir.1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 827 (1971) (indicating that misuse of bail could constitute a civil rights violation).

and "honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department." The Policies and Procedures Manual of the Tooele County Sheriff's Office requires its officers to be informed of the criminal law and to abide thereby. The Manual also states that no officer shall "use or attempt to use his official position to secure special privileges or exemptions for himself or others."

Deputy Jones had the opportunity to acquire the vehicles because of his official position. The record shows no attempt by Deputy Jones to ascertain for Douglas Jones whether he could post the vehicles as bail or even what the correct bail amount was. Douglas Jones claims that he was completely unaware that the actual result of all the paperwork was a sale of the vehicles to Deputy Jones. Taken together, this shows neither personal or official honesty nor protection of the innocent against deception.

Before the Merit Commission, the Justice of the Peace from Wendover testified that other deputies before Deputy Jones had accumulated cars and other property by purchasing them from prisoners who needed money for bail. The district court, in upholding the Merit Commission's finding that Deputy Jones had done nothing "improper," cited the fact that "[t]he Justice of the Peace stated that buying property from a prisoner was common practice." Because of the inherent potential for overreaching by the officer, it is difficult to imagine any circumstance where such a practice could be proper. It is a clear example of the use of official position to gain special privileges and is inherently coercive. Where the operation of the courts and the execution of the laws are involved, the mere appearance of impropriety may sufficiently threaten the integrity of our public institutions so as to justify an absolute ban on certain conduct. *See,*

e.g., Canon 2, *Code of Judicial Conduct* (March 1, 1974). The paramount nature of this interest in the appearance of integrity has been recognized by the Legislature, which has provided that a peace officer's certification may be revoked or suspended for "[a]ny conduct or pattern of conduct that would tend to disrupt, diminish or otherwise jeopardize public trust and fidelity with regard to law enforcement." U.C.A., 1953, § 67–15–10.5(1)(e) (Supp. 1985).

If conduct of the sort shown here is common in Utah, as the Justice of the Peace testified, this case should serve notice on all concerned that it will not be tolerated by the judiciary and that it should be rooted out by law enforcement before it subjects those involved, and their employers, to liability. *See* cases cited *supra* note 7. *See also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Second, Finding of Fact No. 1 states that Deputy Jones did not obtain the property at a fraction of its value. There is no evidence in the record to support this finding. When Douglas Jones was arrested, he had the bills of sale in his possession for both the truck and the motorcycle establishing they had just been purchased for $3,195, $2,865 of which had been paid in cash with a balance of $330 remaining. These were confiscated and read by Deputy Jones. Deputy Jones paid Douglas Jones $110 in cash and assumed a balance of $330 (which there is no evidence that he ever paid). The evidence also shows that Deputy Jones subsequently sold the unaltered motorcycle for $1,100.

Third, Finding of Fact No. 1 states that Deputy Jones did not improperly or illegally dispose of or maintain possession of the vehicles. Deputy Jones' use of the license plate was a violation of section 41–1–142.[8] Maintenance or disposition of the property, however, was technically only illegal to the extent that obtaining the truck was illegal

---

8. U.C.A., 1953, § 41–1–142 prohibits, among other things, removing, possessing, or using a license plate from a vehicle not registered to the remover, possessor, or user. In Finding of Fact No. 2, the Merit Commission found that Deputy Jones had violated section 41–1–142.

as set forth above. His use of the property, violated both the spirit and the letter of the law. He could not legally operate the truck on public roads because he did not have title to it and could not obtain title. Therefore, although his possession of the truck may technically have been legal, his use of it was not since he could only drive the truck by engaging in illegal acts.

Further, the last phrase of Finding of Fact No. 1, in conjunction with Finding of Fact No. 2, outlines illegal activity which considered as a whole is sufficient to warrant discharge. The owner of the vehicle from which Deputy Jones had removed the license plate reported the missing license plate to Deputy Jones. Even though he had the license plate in his possession at that time and was using it on the truck, he did not inform anyone or include this information in his report. This was an express violation of the mandates of the Policies and Procedures Manual of the Tooele County Sheriff's Department.

In Finding of Fact No. 2, the Merit Commission found that Deputy Jones removed the license plates from an impounded vehicle in violation of section 41–1–142(b). He placed them on his truck, a vehicle other than the one for which they were issued, in violation of section 41–1–142(c). He used the plates on his truck, a vehicle other than the one for which they were issued, in violation of section 41–1–142(d). He operated the truck on the public highways without having its own license plates attached to it in violation of section 41–1–142(f) and without having paid the required registration fee in violation of section 41–1–142(g).

The second *Vetterli* inquiry, whether the charges warrant the sanction imposed, is a limited one. The sheriff must manage and direct his deputies, and is in the best position to know whether their actions merit discipline. If the Merit Commission finds upon review that the facts support the charges against the deputy, then it must affirm the sheriff's disciplinary action, unless it finds the sanction so clearly disproportionate to the charges as to amount to an abuse of the sheriff's discretion. *Cf. Thomas v. City and County of Denver*, 29 Colo.App. 442, 487 P.2d 591, 593 (1971).

In this case, the sheriff did not abuse his discretion when he discharged Deputy Jones. The record is replete with behavior which is either expressly illegal or unquestionably improper. The evidence clearly supports the charges. As to whether the charges warrant the sanction imposed, in *Hutchison v. Cartwright*, Utah, 692 P.2d 772 (1984), we held that a deputy sheriff's "serious conflict and argument" with a county attorney at a deposition was sufficient misconduct to warrant the deputy's discharge. *Id.* at 773. In view of that decision, Deputy Jones' multiple criminal and ethical violations provide sufficient cause to warrant his discharge.

Reversed and remanded to the Merit Commission for reinstatement of the sheriff's discharge order.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

HALL, C.J., does not participate herein; BILLINGS, District Judge, sat.