**UTAH DEPARTMENT OF CORRECTIONS,
Petitioner,**

v.

**John R. DESPAIN and the Career Service Review Board,
Respondents.**

**No. 910113–CA.**

Court of Appeals of Utah.

Dec. 5, 1991.

---

R. Paul Van Dam and Stephen G. Schwendiman, Salt Lake City, for petitioner.

L. Zane Gill and Robert N. White, Salt Lake City, for respondents.

Before BENCH, BILLINGS and GARFF, JJ.

BILLINGS, Associate Presiding Judge:

Petitioner Utah Department of Corrections (Department) dismissed respondent John R. Despain (Despain) from employment as a prison guard for off-duty conduct. Despain appealed his termination to respondent Career Service Review Board (CSRB). After an evidentiary hearing, a CSRB Hearing Officer reinstated Despain, finding he had not been terminated for just cause, but suspended him for twenty working days without pay. The Department appealed to the CSRB, which affirmed the decision of the Hearing Officer. On appeal, the Department urges this court to overturn the CSRB's reinstatement of Despain. We reverse the decision of the CSRB and reinstate the Department's order of termination.

## FACTS

In 1985, the Department hired Despain as a Correctional Supervisor I. He had

reached the rank of Grade 21 Correctional Officer at the time of his termination. The Department discharged Despain as a result of a series of events occurring during 1988 and 1989.

Despain and his former wife were undergoing a turbulent divorce during this time period. On November 19, 1988, the Despains had a violent domestic dispute, during which Despain assaulted his former wife. When investigating officers arrived, Despain attempted to dissuade the officers from arresting him by explaining that he was a correctional officer and could lose his job if he were arrested. Although Despain was subsequently arrested for spouse abuse, he was ultimately released, and the Department was not notified of the incident. On June 29, 1989, the Despains had another marital dispute, during which Despain's former wife locked herself in a bathroom, and Despain damaged the bathroom door and other property. Officers were again summoned. This incident was reported to the Department.

Prior to his divorce, Despain moved out of his home and failed to inform the Department of his new address and telephone number, as required by the Department's regulations.

In the early morning hours of August 17, 1989, Despain's vehicle drifted into the emergency lane of a highway, hitting parked vehicles and seriously injuring a tow truck operator. Despain claimed he had fallen asleep at the wheel. In their investigation, however, officers noted that Despain's eyes were red, he had alcohol on his breath, and he failed three field sobriety tests. The officers arrested Despain for driving under the influence of alcohol. Tests administered several hours after the accident indicated that Despain's blood/alcohol content at that time was .074 to .077, below Utah's legal intoxication standard of .08. Despain later pled guilty to reckless driving.

On October 23, 1989, as a result of the above incidents, the Department issued two administrative complaints against Despain, charging him with five violations of departmental policies: (1) "unlawful conduct," based on the alleged assault upon his former wife, in violation of Policy AE 02/03.37(A); (2) "abuse of position," based on Despain's efforts to use his status to avoid arrest for spouse abuse, in violation of Policy AE 02/03.25(A)(3); (3) "dereliction of duty," based on the failure to maintain a current home address and telephone number with the Department, in violation of Policy AE 02/03.05(B)(11); (4) "use of alcohol," based on Despain's arrest for driving under the influence of alcohol and his subsequent conviction for reckless driving, in violation of Policy AE 02/03.23(E); and (5) "unlawful conduct," based on the automobile accident, in violation of Policy AE 02/03.37(A).

On March 2, 1990, a Department of Corrections Administrative Law Judge (ALJ) held two separate administrative hearings. The ALJ issued a Report and Recommendation finding a factual basis to support all of the Department's allegations. The Report and Recommendation concluded with a recommendation for "a range of sanctions from a reduction in grade and 30 days off without pay to termination." The ALJ stated, "viewing the cases together, it is difficult to see how termination can be avoided." Subsequently, both the Warden and the Director of Institutional Operations recommended Despain be terminated.

Despain was notified of the recommendation for termination and exercised his right to appeal to the Executive Director of the Department. A hearing was held on April 4, 1990. On April 30, 1990, the Deputy Director of the Department, acting for the Executive Director, issued a Final Order terminating Despain's employment with the Department.

Despain appealed to the CSRB, and a CSRB Hearing Officer was assigned to hold an evidentiary/Step 5 hearing. The CSRB Hearing Officer concluded that Despain was not terminated for "just cause." The Hearing Officer reinstated Despain but ordered a ten-day suspension without pay for each of the two complaints. The Department appealed the Hearing Officer's decision to the CSRB, which affirmed.

On appeal to this court, the Department seeks reversal of the CSRB's decision reinstating Despain. Furthermore, while Despain concedes that the Hearing Officer had the authority to impose a ten-day suspension for the "dereliction of duty" and "abuse of position" charges, he asserts that she erred in ordering another such suspension for conduct unrelated to his employment.[1]

## I. STANDARDS OF REVIEW

### A. The CSRB's Review of the Department's Disciplinary Action

As a threshold matter, we must determine the appropriate deference required of the CSRB in reviewing the Department's personnel actions. Although the authority of the CSRB is determined by statute[2], its procedures are subject to the administrative rules found in the Utah Administrative Code.

Utah Administrative Rule 140 (1990)[3] specifically addresses the scope of the CSRB's standard of review. Pursuant to Utah Administrative Rule 140–1–20(C), (1990), "[a]n evidentiary/step 5 hearing shall be a new hearing for the record, with both parties being accorded full administrative due process. *The hearing officer shall give latitude and deference to an agency's prior decision when the latter is supported by the findings of fact based on the evidence.*" (Emphasis added). The deferential standard set forth in this rule for review of the Department's personnel actions is consistent with case authority

from both the Utah Supreme Court and the Utah Court of Appeals.[4]

In *In re Discharge of Jones*, 720 P.2d 1356 (Utah 1986), the Tooele County Sheriff discharged a deputy sheriff for inappropriately seizing a vehicle from a prisoner, falsifying reports, and unlawfully removing the license plates from an impounded vehicle. The deputy appealed his discharge to the Tooele County Merit Commission which reinstated him. The district court affirmed the Merit Commission's decision. On appeal, the Utah Supreme Court reversed and reinstated the termination. The court found that an examination of the record revealed evidence supporting the sheriff's allegations. The court held that the inquiry into

> whether the charges warrant the sanction imposed, is a limited one. The sheriff must manage and direct his deputies, and is in the best position to know whether their actions merit discipline. If the Merit Commission finds upon review that the facts support the charges against the deputy, then it must affirm the sheriff's disciplinary action, unless it finds the sanction so clearly disproportionate to the charges as to amount to an abuse of the sheriff's discretion.

*Id.* at 1363 (citation omitted).

In *Utah Department of Corrections v. Sucher*, 796 P.2d 721 (Utah App.1990), the Department of Corrections terminated Sucher, a prison guard, for striking a prisoner who spat upon him. Sucher claimed he struck the prisoner out of fear of con-

---

1. Because of our resolution of this case, we do not reach the issue of whether the Hearing Officer erred in imposing a ten-day suspension for conduct allegedly unrelated to Despain's employment. Furthermore, because Despain failed to file a cross appeal, this issue is not properly before the court.

2. The CSRB replaced the former Utah Personnel Review Board. Its organization, powers, and duties are described in Utah Code Ann. §§ 67-19a–101 to –408 (Supp.1989), the statutes in effect at the time of Despain's administrative termination proceedings. These statutes were subsequently amended and currently appear as Utah Code Ann. §§ 67–19a–101 to –408 (Supp. 1991).

3. We look to the 1990 edition of the Utah Administrative Code, as it was in effect at the time of Despain's administrative termination proceedings.

4. Although Utah's appellate courts have not specifically dealt with the CSRB, they have addressed the standard of review applied by its predecessor, the Personnel Review Board, and by merit commissions. Merit commissions are statutorily-created bodies which review personnel actions of the sheriff of each county. *See* Utah Code Ann. §§ 17–30–1 to –24 (1991). Both of these organizations, like the CSRB, are statutorily-created bodies vested with the authority to review agency personnel actions.

tracting AIDS through saliva. He appealed to the Utah Personnel Review Board (PRB) which "overturned the termination and imposed a fifteen-month suspension without pay and other sanctions." *Id.* at 722.

The Department of Corrections appealed the propriety of the PRB's action to this court. Quoting Utah Administrative Rule 665–1–25.4 (1987–88)[5], we emphasized that "[a] hearing officer must 'give latitude and deference to an agency's prior decision when the latter was supported by the findings of fact based on the evidence,'" *id.* at 722–23, reversed the PRB's decision, and reinstated the order of termination.

The law is clear that the CSRB must give "latitude and deference" to the Department's personnel actions. The CSRB's role in examining the Department's personnel actions is a limited one. The CSRB is restricted to determining whether there is factual support for the Department's charges against Despain and, if so, whether the Department's sanction of dismissal is so disproportionate to those charges that it amounts to an abuse of discretion.[6]

### B. The Court of Appeals' Review of the CSRB's Decision

On appeal to this court, the Department seeks our review of the propriety of the CSRB's decision reinstating Despain.

Whether an employee is appropriately terminated for "just cause," under agency standards, is a question of applying the facts to the administrative scheme within the purview of the CSRB. *See Johnson v. Department of Employment Sec.*, 782 P.2d 965, 968 (Utah App.1989) (citing *Law Offices of David Paul White v. Board of Review*, 778 P.2d 21, 23 (Utah App.1989)); *Pro–Benefit Staffing v. Board of Review*, 775 P.2d 439, 441 (Utah App.1989).

Under the Utah Administrative Procedures Act[7], we must determine whether the CSRB, "by virtue of its experience or expertise, is in a better position than [we are] to give effect to the regulatory objective to be achieved." *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 586 (Utah 1991). If so, we review the CSRB's decision to see if it was reasonable or rational. If not, we review it for correctness.[8]

We need not decide whether to apply the more stringent correction of error standard, as we conclude that, even under the more deferential reasonableness standard, the CSRB has erred. For the reasons set forth in sections II and III of this opinion, we find that the CSRB's decision reversing the order of termination was not reasonable as there was a factual basis to support the Department's allegations, and Despain's termination was not a "sanction so clearly disproportionate to the charges as

---

5. At the time of Despain's administrative termination proceedings, this rule was known as Utah Administrative Rule 140–1–20(C) (1990).

6. Despite this clear direction, the CSRB, in its decision in this case, quoted one of its own previous decisions, stating, with our emphasis: "The Board's hearing officers are to exercise their own discretion as to what evidence or record will be relied upon for their overall decisionmaking at Step 5.... *The degree of deference granted to department's findings and conclusions is discretionary with the Board and its hearing officers ....*" The CSRB seems not to have applied the correct standard in reviewing the Department's decision to discharge Despain.

7. *See* Utah Code Ann. §§ 63–46b–1 to –22 (1989 & Supp.1991).

8. As the Utah Supreme Court stated in *Savage Industries, Inc. v. Utah State Tax Commission*, 811 P.2d 664 (Utah 1991),

agency decisions which are granted a more deferential review are often mixed questions of law and fact, which require application of specific technical fact situations to the statutes which an agency is empowered to administer. These are the types of decisions and applications in which the agency's special expertise puts it in a better position than an appellate court to evaluate the circumstances of the case in light of the agency mission. *Id.* at 668. If an agency's decision is based on statutory interpretation or construction of the law, however, rather than an application of fact to administrative policy, we review it under a "correction of error" standard, giving no deference to the agency's decision. For questions of general law, "the court is as suited to decide the issues involved as is the agency and therefore will review the agency decision for correctness." *Id.*

to amount to an abuse of ... discretion." *Jones*, 720 P.2d at 1363 (citation omitted).

## II. FACTUAL BASIS SUPPORTING DESPAIN'S VIOLATIONS OF DEPARTMENTAL POLICIES

■ The Department charged Despain with five violations of departmental policies. We examine the CSRB Hearing Officer's findings of fact to determine whether they support the alleged violations, thus requiring the CSRB to give "latitude and deference" to the Department's decision. Utah Code Admin.P.R. 140–1–20(C) (1990).

■ Based on the assault upon his former wife, Despain is charged with violating Policy AE 02/03.37(A) which states: "Any act or conduct that constitutes a wrongful practice as defined by federal, state or local law is prohibited." The Department's ALJ found "substantial evidence" that Despain assaulted his former wife on November 19, 1988.[9] Therefore, the ALJ concluded that Despain violated the departmental policy prohibiting "unlawful conduct." The CSRB credited Despain's former wife's testimony that Despain hit her, they struggled, and she fell to the floor bleeding. The CSRB also acknowledged that Des-

pain's former wife claimed Despain slapped her many times and pulled out her hair. The CSRB does not reject the testimony of Despain's former wife but, rather, characterizes the marital dispute as a mutual altercation.[10] The CSRB concluded that Despain did not criminally assault his former wife because "[n]o such legal charge—much less conviction—was ever officially brought against him." Therefore, the CSRB found a factual basis for the assault but excused Despain's behavior because his former wife allegedly assaulted him, and he was never convicted of assault.

We conclude that, under either the ALJ's or the CSRB's view of the evidence, Despain violated Policy AE 02/03.37(A). The fact that Despain was not convicted of assault is not dispositive because a policy violation does not require a conviction. Furthermore, the facts indicate that Despain violated the Cohabitant Abuse Procedures Act[11], even though he was released after his arrest. Under Utah Code Ann. § 77–36–1(2) (Supp.1991), "domestic violence" embraces assault[12] and aggravated assault.[13] According to the CSRB, Despain deliberately slapped his former wife, caused her to bleed, and pulled out her hair, all of which involved "bodily injury."

9. In his factual summary, the ALJ stated:
 During the fight Mr. Despain struck his wife in the face and pulled out a large amount of hair from the top of her head. Mr. Despain continued the assault in the hall, forcing Mrs. Despain's face into the tile floor. A pool of blood approximately six inches in diameter formed beneath her face. During the altercation Mrs. Despain struck Mr. Despain with her keys. He sustained a scratch on his face. The ALJ also noted that "[g]iven the difference in size and strength between Mr. Despain and Mrs. Despain and Mr. Despain's training in arrest control tactics, it is clear he used excessive force."

10. According to the CSRB,
 both Sally and John Despain had assaulted each other in the November 19, 1988, incident. They slapped and kicked at each other. They had struggled together on the floor. Blood flowed from scratches and cuts on each spouse. He pulled her wiglet loose together with some [of] her natural hair loose, causing blood to flow. She hit him in the face with a heavy set of keys, and scratched his face with her nails, causing blood to flow.
 The CSRB concluded: "Despain did not criminally assault his estranged wife...." Rather,

 "[b]oth spouses appear to have acted out physically...." Furthermore, "[b]oth appear to have had a pattern of acting out during their domestic quarrels in a belligerent manner."

11. *See* Utah Code Ann. §§ 77–36–1 to –8 (1990 & Supp.1991).

12. "Domestic violence" includes the "assault" of one cohabitant against another. *See* Utah Code Ann. § 77–36–1(2)(a) (Supp.1991). "Assault" is defined, pursuant to Utah Code Ann. § 76–5–102(1)(c) (Supp.1991), as "an act, committed with unlawful force or violence, that causes or creates a substantial risk of bodily injury to another."

13. "Domestic violence" includes the "aggravated assault" of one cohabitant against another. *See* Utah Code Ann. § 77–36–1(2)(b) (Supp.1991). "A person commits aggravated assault if he commits assault as defined in Section 76–5–102 and he: (a) intentionally causes serious bodily injury to another; or (b) uses a dangerous weapon ... or other means or force likely to produce death or serious bodily injury." Utah Code Ann. § 76–5–103(1) (1990).

The second charge is based on Despain's efforts to use his status to avoid arrest for spouse abuse, in violation of Policy AE 02/03.25(A)(3) which states: "Members shall not use their official position, official identification cards or badges for: ... avoiding the consequences of illegal acts." The CSRB determined that "Despain had, indeed, abused his position as a correctional officer by making reference to his employment at Utah State Prison in the presence of police officers" to secure preferential treatment.

■ The third charge against Despain is based on his failure to maintain a current home address and telephone number with the Department. Despain is charged with violating Policy AE 02/03.05 which states: "A. Dereliction of duty by any member prejudicial to the proper performance of duty is prohibited and shall be grounds for disciplinary action, including dismissal. B. Dereliction of duty shall include but not be limited to: ... 11. refusal to maintain a current address and telephone on file with the Department." The CSRB's factual findings support the Department's charge. Quoting the CSRB Hearing Officer, the CSRB stated "Despain's failure to maintain a current address and telephone number with his employing agency was 'a matter of serious concern.'" The CSRB further noted that because the Department was unable to reach Despain, it had to wait until Despain called its inspector's office to establish contact with him.

The final two charges against Despain arose from the automobile accident which occurred August 17, 1989. Based on his arrest for driving under the influence of alcohol and subsequent conviction for reck-

less driving, Despain is charged with violating Policy AE 02/03.23(E), which states: "Members who consume or otherwise use intoxicants while off duty shall not participate in any activity, to include the operation of a motor vehicle, which results in violation of federal laws or state statutes or local ordinances, or which will reasonably tend to bring discredit to the Department." Also, based on the automobile accident itself, Despain is charged with another violation of Policy. AE 02/03.37(A), set forth above. The CSRB acknowledged the Hearing Officer's finding that Despain "had operated a motor vehicle after having consumed intoxicants." However, because Despain was able to plea-bargain to a charge of reckless driving, the CSRB rejected the Department's finding that Despain was guilty of driving while intoxicated.[14] Nevertheless, the CSRB confirmed that Despain was involved in a serious accident at a time when he had consumed intoxicants and had violated the law against reckless driving.

In sum, the CSRB found a factual basis for all of the violations alleged by the Department, although putting a different blush on two.[15] Thus, the CSRB should neither have reversed the Department's decision to terminate Despain nor modified the penalty unless it found "the sanction so clearly disproportionate to the charges as to amount to an abuse of ... discretion." *Jones*, 720 P.2d at 1363 (citation omitted).

## III. REVERSAL OF TERMINATION AND IMPOSITION OF ALTERNATIVE PENALTY

### A. Nexus

■ The CSRB claims the Department abused its discretion by discharging Des-

---

**14.** The Department's ALJ found that, despite flashing lights, Despain's vehicle struck two vehicles parked in the emergency lane of the freeway. After failing three field sobriety tests, Despain was arrested because the trooper who administered the tests "was convinced after the third test Mr. Despain was under the influence." Although the ALJ acknowledged that intoxilyzer and blood tests were properly conducted, revealing Despain's blood/alcohol content as between .074 and .077 at the time the tests were administered, he accepted as fact expert testimony that Despain's blood/alcohol level at the time of the accident was .104, above Utah's intoxication

standard of .08. In contrast, although the CSRB confirmed the ALJ's findings as to the events prior to the accident, the CSRB emphasized Despain's ultimate conviction for a "nonalcohol-related reckless driving offense."

**15.** The CSRB's factual findings differed from those of the ALJ only with respect to the severity of Despain's actions in abusing his former wife and driving after drinking alcohol. The CSRB required that Despain be convicted of assault and driving under the influence to warrant the sanction of termination.

pain because the Department failed to establish a sufficient "nexus" between his off-duty conduct which violated departmental policies and his ability to satisfactorily perform his duties as a correctional officer.

The fact that the policy violations occurred while Despain was not on the job does not defeat the nexus requirement. Courts often find a nexus between off-duty conduct and job performance [16], particularly where the position requires high morals, control, and discipline and the off-duty conduct is in violation of specific employment policies.

Two cases, however, are particularly instructive to our analysis of nexus because of their factual similarity to the instant case. In *Dexter v. Idaho Falls City Police Department*, 113 Idaho 179, 742 P.2d 434 (Ct.App.1987), a police officer who had maintained a satisfactory work record for four years was discharged because, as a parent, his use of excessive force in disciplining his stepchildren "adversely reflected upon his calling as an officer of the law and thus cast serious doubt upon his ability to perform his duties as a policeman." *Id.* at 435. Upholding his termination, the Idaho Court of Appeals affirmed the findings of the Idaho Falls Civil Service Commission: "Dexter's actions demonstrated an inability to control his temper and an inability to react appropriately as a result thereof. ... Dexter's demonstrated inability to control his temper when confronted with relatively insignificant provocation cast[s] significant doubt upon his ability to perform his job duties." *Id.*

In *City of Tucson v. Mills*, 114 Ariz. 107, 559 P.2d 663 (Ct.App.1976), a parks guard appealed his termination by the Parks and Recreation Department of the City of Tucson for disorderly and abusive conduct "threatening the safety of his family" and others during his off-duty hours. *Id.* 559 P.2d at 665. The court noted that the incidents giving rise to the appellee's termination resulted from marital discord. *See id.* at 668 n. 2. The Court of Appeals of Arizona, agreeing with the Civil Service Commission's finding that the appellee was no longer qualified for his position, stated that "appellee reacted in an uncontrollable and aggressive manner when provoked and under pressure, an undesirable characteristic for a law enforcement officer. He thus posed a potential danger to the public

---

**16.** *See, e.g., Wilson v. Swing,* 463 F.Supp. 555, 564 (D.N.C.1978) (court affirmed discharge of off-duty police officer for engaging in extramarital affair with another police officer because the termination "was clearly designed to further the Department's interest in its morale, discipline, effectiveness and reputation in the community"); *Puzick v. City of Colorado Springs,* 680 P.2d 1283, 1286 (Colo.App.1983) (court affirmed suspension of off-duty police officer for sexual misconduct because such conduct "has the effect of impairing the operation or efficiency of the department, or [may bring] the department into disrepute"); *Millsap v. Cedar Rapids Civil Serv. Comm'n,* 249 N.W.2d 679, 686 (Iowa 1977) (court affirmed suspension of off-duty police officer for intoxication and unbecoming conduct because "[i]t is well established that the image presented by police personnel to the general public is vitally important to the police mission"); *In re Zeber,* 398 Pa. 35, 156 A.2d 821, 825 (1959) (court affirmed discharge of off-duty firefighter for sexual misconduct because unbecoming conduct not only "adversely affects the morale or efficiency of the bureau to which [the employee] is assigned" but also "has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services"); *Richter v. Civil Serv. Comm'n,* 35 Pa.Commw. 310, 387 A.2d 131, 133 (1978) (court affirmed discharge of off-duty police officer for allowing an establishment to serve alcoholic beverages beyond the legal closing time and associating with a known prostitute because such actions "could [bring] dishonor upon his profession and lead to a weakening of the public confidence and trust of which he is a repository"); *Clearfield City v. Department of Employment Sec.,* 663 P.2d 440, 442 (Utah 1983) (court affirmed discharge of off-duty police officer for sexual misconduct occurring during working hours of a second job because "[i]n the sensitive area of law enforcement a police officer's reputation of high moral character and his credibility as a witness in his frequent appearances in the courts of law are essential to his effective performance of his duty"); *but see Stevens v. Hocker,* 91 Nev. 392, 536 P.2d 88, 90 (1975) (court reversed discharge of off-duty correctional officer for intoxication and abuse of an arresting officer attempting to stop a marital dispute because it found the applicable rules overbroad and determined "the legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval.").

which fully justified the revocation of his status as a special patrolman." *Id.* at 668.

*Dexter* and *Mills* also serve to illustrate why we decline to find the technical distinctions between a "correctional officer" and a "peace officer" dispositive in this case.[17] Regardless of the specific status of law enforcement officers, the nature of their employment demands a level of behavior that is, at all times, worthy of public confidence and reflective of their ability, when on the job, to control their tempers and react in a reasonable manner to difficult situations. Both categories of officers are charged with protecting the public, supervising criminals, and are sworn to uphold the law.

In finding that the Department failed to establish the necessary nexus between Despain's off-duty conduct and his job performance, the CSRB ignored the Department's determination on this issue. With regard to Despain's assault upon his former wife, the Department's ALJ stated:

> Mr. Despain's conduct ... is deplorable. The prison houses inmates who participated in domestic violence, some far more serious than Mr. Despain's. Knowledge that Mr. Despain had assaulted his wife could undermine his ability to deal with inmates. His conduct toward his wife in a stressful domestic situation raises a question about his ability to use appropriate force in stressful inmate confrontations.

The Department's Final Order echoed the ALJ's concerns about the effect Despain's off-duty behavior might have on his employment:

> Mr. Despain's conduct was a violation of policy and calls his judgment and self-control into question..... [H]is actions ... demonstrate a lack of good judgment

and an inability to control his emotions in a stressful situation. His judgment and self-control are particularly important when viewed in the context of the stress prevailing in a prison.

Furthermore, because of the public trust reposed in law enforcement officers, we find Despain's use of his position to avoid arrest for spouse abuse sufficiently related to his employment to satisfy the nexus requirement. Finally, there is no question that Despain's failure to inform the Department of his current address and phone number was directly relevant to the requirements of his position.

We conclude the Department established a sufficient nexus between Despain's off-duty violations of departmental policies and his ability to fulfill his duties as a prison guard.

## B. Modification of Penalty

 The CSRB claims it properly modified the Department's disciplinary penalty based upon its authority under Utah Administrative Rule 140–1–20(J) (1990), which states: "If the hearing officer finds that the action complained of which was taken by the appointing authority was too severe, even though for good cause, the hearing officer may provide for such other remedy or relief as deemed appropriate and in the best interest of the respective parties."

The Hearing Officer ruled that Despain was not terminated for "just cause." Accordingly, she replaced the Department's sanction of termination with three penalties totalling twenty working days' suspension without pay [18]: (1) ten days' suspension without pay for the "use of alcohol" and "unlawful conduct" charges arising from

---

17. The CSRB emphasized that because Despain is a "correctional officer" and not a "peace officer" he must not be held to the same high standard of off-duty conduct required of peace officers. We do not find dispositive the question of whether Despain had statutory "peace officer" status while off duty. The Department clearly has the right to demand a high standard of off-duty conduct if such conduct is relevant to the performance of a correctional officer's job.

18. We note that the CSRB's penalty of twenty days' suspension without pay falls within the range of disciplinary penalties it may impose. *See* Utah Code Admin.P.R. 468–11–1(4)(b) (1990) ("Suspension of the employee without pay up to 30 calendar days per occurrence requiring discipline.").

the automobile accident [19], (2)' five days' suspension for the "abuse of position" charge, and (3) five days' suspension for the "dereliction of duty" charge.

Rule 140–1–20(J), however, gives the CSRB authority to modify the Department's sanction only if the Department has abused its discretion in imposing that sanction. As explained in *Szmaciarz v. California State Personnel Board,* 79 Cal. App.3d 904, 145 Cal.Rptr. 396 (1978):

> [I]f the penalty imposed was under all the facts and circumstances clearly excessive, this will be deemed an abuse of discretion .... In determining whether there has been an abuse of discretion the Supreme Court of this state has stated that "If reasonable minds might differ as to the propriety of the penalty imposed, this fact serves to fortify the conclusion that the [administrative body] acted within in the area of its discretion."

145 Cal.Rptr. at 405–06 (citations omitted); *See also Jones,* 720 P.2d at 1363 (if facts support charges, Merit Commission must affirm penalty unless there is abuse of discretion).

We have previously held that the CSRB found substantially all of the charges supported by the facts. We further conclude that there is a clear nexus between Despain's off-duty violations and his employment responsibilities. Under the circumstances, we cannot say that the Department's termination of Despain was an abuse of discretion. Therefore, the CSRB erred by replacing the Department's disciplinary action with a modified penalty.

## CONCLUSION

In summary, we find that the Department's allegations against Despain were supported by the facts, sufficiently connected with his employment, and of a substantial nature such that the Department did not abuse its discretion in terminating Despain. Because we cannot say that the Department's disciplinary action was clear-

ly disproportionate to the violations, we reverse the CSRB's order and reinstate the Department's Final Order of termination.

GARFF, J., concurs.

BENCH, P.J., concurs in the result.

---

**19.** Despain contends that the Hearing Officer exceeded her authority in imposing a penalty for these charges, claiming a lack of nexus between the automobile accident and his employ-ment. However, because Despain filed no cross appeal, this question is not properly before the court. We, therefore, decline to address the merits of this issue.